Argued and submitted July 21, 1983, affirmed November 21, 1984

# STATE OF OREGON,
*Respondent,*

*v.*

# PAUL DEAN MARTIN,
*Appellant.*

# (10-82-06827; CA A26859)

691 P2d 154

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

JOSEPH, C. J.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals from a conviction for burglary in the first degree. He assigns as error the trial court's denial of his motion to suppress certain evidence and inculpatory statements. We agree that, under Oregon law, the trial court erred in not allowing the motion. We conclude, nevertheless, that the error was harmless and affirm. We also affirm under federal law.

Defendant argues that, under ORS 131.615, the police did not have a "reasonable suspicion" to support stopping the vehicle that he was driving. He also argues that the warrantless search of its trunk violated his right to be free from unreasonable searches guaranteed by Article 1, section 9, of the Oregon Constitution and by the Fourth Amendment. We treat defendant's statutory claim first and then consider the state constitutional claim.[1] We need reach the federal claim only if the protections of Article 1, section 9, "falls short of a standard imposed by the federal constitution." *State v. Kennedy,* 295 Or 260, 262-4, 666 P2d 1316 (1983); *State v. Caraher,* 293 Or 741, 752, 653 P2d 942 (1982).

On August 4, 1982, a burglary occurred in a house adjacent to a union hall parking lot. A union employe informed the police that, around midday on the day of the burglary, he had seen a 1966 to 1970 full-size, green Ford 2-door hardtop parked near a hedge bordering the burglarized residence. Police in the community were familiar with a vehicle matching that description. They knew that it belonged to a woman named Lancaster, who was known to sleep in her car on occasion. Investigating officers spent two days after the burglary trying to locate Lancaster and her car.

On August 6, an officer observed a 1969 full-size, green 2-door Ford hardtop pull into the union hall parking lot and make a turnaround. The officer stopped the vehicle.

---

[1] In *State v. Lowry,* 295 Or 337, 343, 667 P2d 996 (1983), the court said:

"As this court has repeatedly stated, the proper sequence begins with an examination of ordinary rules of law and the scope and limits of legal authorization before reaching any constitutional issue, because when some challenged practice is not authorized by law, the court acts prematurely if it decides whether the practice could be authorized without violating the Constitution."

Defendant, the driver, informed the officer that he had borrowed the car in order to get some hamburgers. After he had failed to produce a driver's license and had given the officer two conflicting names, he was taken into custody.[2]

When defendant got out of the car, the officer saw some marijuana in plain view on the driver's seat. A search of defendant produced a pocket watch that was later identified by the burglary victim. The officer also searched the interior of the car and then opened the trunk, where he observed a gun case with the burglary victim's name on it. At that point, the officer stopped searching and decided to impound the car. He told defendant that he had found the gun case. Defendant was advised of his rights, waived them and made a statement that implicated him in the burglary.

A records check revealed that the car driven by defendant was, in fact, owned by Lancaster. Shortly thereafter she was located. She told the police that she had seen defendant with various items of property and that he had made admissions to her concerning the burglary. She turned over stolen coins that she said defendant had given her, and she also supplied the names of persons to whom defendant had sold and delivered goods taken in the burglary. (When those persons were contacted, they identified defendant as the source of the goods.) Lancaster gave the police permission to search her automobile. Additional evidence implicating defendant in the burglary was uncovered during that search.

Defendant first contends that the police did not have a "reasonable suspicion" that the car he was driving was involved in criminal activity, that the stop of the car was therefore unlawful and that all evidence and statements flowing from the stop should have been suppressed.

██ ██ Under Oregon law, an officer may stop a person whom the officer reasonably suspects has committed a crime. ORS 131.615(1). "Reasonable suspicion" exists if, at the time, the officer is aware of facts that constitute an objective cause for the stop. ORS 131.605(4); *State v. Goldsby,* 59 Or App 66, 69, 650 P2d 952 (1982). The officer who made the stop was on

---

[2] Defendant was arrested for the Class C misdemeanor of failure to display an operator's license, ORS 482.655, and the Class A misdemeanor of giving a false name to a police officer. *Former* ORS 482.610(4).

the lookout for a particularly described car that had been observed parked near the house around the time of the burglary. Furthermore, the police were looking specifically for a specific vehicle known to match the description. That car pulled into the parking lot adjacent to the burglarized residence. The facts known to the officer warranted a stop based on a reasonable suspicion.

■ Defendant next argues that the search of the trunk without a warrant violated both state and federal constitutional prohibitions against unreasonable searches or seizures. We first consider defendant's claim based on Article I, section 9, of the Oregon Constitution. The rule that law enforcement officers must first obtain a warrant before making a search or seizure is well established. *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979); *State v. Miller,* 269 Or 328, 334, 524 P2d 1399 (1974). A search conducted without a warrant is *per se* unreasonable. *State v. Greene, supra,* 285 Or at 340-41. On the basis of practical considerations of effective law enforcement, however, several limited exceptions to the warrant requirement have been judicially created.

*State v. Caraher,* 293 Or 741, 759, 653 P2d 942 (1982), and *State v. Lowry, supra* n 1, discuss the extent to which Article 1, section 9, permits a warrantless search incident to a lawful arrest. According to *Caraher,* Oregon's search incident to arrest exception allows some searches that cannot otherwise be justified by traditional considerations of protection of the officer and prevention of destruction of evidence.[3] *Caraher* interprets section 9 to permit a warrantless search incident to arrest if the search is related to the crime for which the defendant is arrested *and* if the scope of the search is reasonable under the circumstances. *State v. Caraher, supra,* 293 Or at 759.

■ The search of defendant's trunk was not related to his arrest for the driving violations. It could be argued that the search fails the relatedness test described in *Caraher,* but a

---

[3] The court stated the traditional considerations in *State v. Elkins,* 245 Or 279, 283, 422 P2d 250 (1966):

"The justification for the [warrantless search incident to lawful arrest] exception is the necessity to secure the safety of the police and the custody of the prisoner, and to prevent the destruction of evidence by gathering the fruits of the crime and the implements thereof."

more complex question is raised under the facts. Although the initial arrest was for driving violations, the subsequent plain view sighting of the marijuana would have justified an arrest for that possession. Requiring law enforcement officials to cite suspects already in custody on newly discovered charges would operate merely to hamper effective on-the-scene investigation rather than to protect the constitutional rights of citizens. Although the search of defendant's trunk for marijuana could be related to the reason for arrest, the scope of that search was not reasonable. The warrantless search of the interior of defendant's car was a permissible search incident to arrest. However, the opportunity to obtain a warrant is an important factor in evaluating the permissible scope of a warrantless search. *State v. Lowry, supra* n 1; *State v. Chinn,* 231 Or 259, 273, 373 P2d 392 (1962). Once the police reach a logical stopping point in the course of a search incident to arrest, they must seek a warrant, *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984), and that point was reached before the search of the trunk. Defendant was in custody, and there was nothing to indicate that any evidence that might be in the trunk was in jeopardy.

The state also argues that the search of defendant's trunk was a valid warrantless search, because it was based on probable cause and exigent circumstances. That argument fails because, even if there was probable cause, there were no exigent circumstances justifying a search. Under Article 1, section 9,

> "there is no general 'automobile exception' to the constitutional guarantee. * * * Except for authorized inspections concerning the vehicle itself, as a licensed and regulated piece of machinery, an automobile or other vehicle is certainly one of a person's 'effects' secured against unreasonable search, or seizure. The need to seize or to search an automobile may often arise under the 'exigent' circumstances that justify acting without a warrant, but exigency does not arise merely from the mobility of the vehicles as a class. There must be actual exigent circumstances to justify a warrantless seizure or a warrantless search." *State v. Greene, supra,* 285 Or at 358. (Linde, J., concurring.)

*See also State v. Kirsch,* 69 Or App 418, 686 P2d 446, *rev den* 298 Or 151 (1984).

██ Once defendant was in custody, he posed no threat to

the evidence the police suspected might be in the trunk. Furthermore, the record indicates that, before the arresting officer discovered the gun case in the trunk, he had planned to leave the vehicle where it was and simply have its owner, Lancaster, pick it up later. The warrantless search of the vehicle's trunk violated defendant's right to be free from unreasonable searches under Article 1, section 9. The trial court's denial of defendant's motion to suppress on the basis of the illegal search was therefore error.[4] *See State v. Brody,* 69 Or App 469, 686 P2d 451 (1984).

Admission of the gun case arguably could nonetheless be sustained on the basis of inevitable discovery. *See State v. Miller,* 67 Or App 637, 647 n 9, 680 P2d 676, *rev allowed* 297 Or 601 (1984). However, the admission of the statements could not be upheld by that rule. In any event, we need not decide the inevitable discovery question, for we do not believe defendant was denied a fair trial. In *State v. Van Hooser,* 266 Or 19, 25, 511 P2d 359 (1973), the court stated the two requirements for affirmance despite error:

> "(1) [T]hat there was substantial and convincing evidence of guilt; and (2) that the error committed was very unlikely to have changed the result of the trial."

Even if the trial court had excluded the gun case and

---

[4] Despite its apparent reaffirmance in *State v. Caraher,* 293 Or 741, 758-59, 653 P2d 942 (1982), we are perplexed about the continuing vitality of *State v. Krogness,* 238 Or 135, 388 P2d 120, *cert den* 377 US 992 (1964). In *Krogness,* a policeman stopped a car for speeding. In addition to three occupants, the car contained a military-type rifle with a telescopic sight. Even though the car was coming from town, the officer claimed that the presence of the rifle constituted probable cause to search for evidence of a game violation. About the time that the officer saw the rifle, other police cars arrived in response to a call by the officer who made the stop. The three suspects in the car were asked to get out and sit in police cars. Police searched the trunk and found the fruits of a bank robbery. The *Krogness* court upheld the search, explaining that, even though the officer had originally stopped the car for a traffic violation, the presence of the gun with a telescopic sight gave him probable cause to believe that contraband animals and birds were being transported in the automobile and that that gave him the right to search the automobile trunk and interior. Evidence found in the course of the search was held to be admissible.

Given the facts in *Krogness,* the holding is difficult to understand. A federal district court granted Krogness' petition for *habeas corpus* and held that the search was illegal. *United States ex rel Krogness v. Gladden,* 242 F Supp 499 (DC Or 1965). Perhaps that is why neither party cited *Krogness* in the present case. What is troublesome is that *Krogness* is cited in *Caraher* and *Lowry* as an historical example of Oregon's search and seizure law under the state constitution. However, the holding in *Krogness* is so contrary to the principles developed in *Caraher* and *Lowry* that we conclude that *Krogness* is not controlling in the present case.

the inculpatory admissions made by defendant when he was confronted with it, there would still exist substantial and convincing evidence of his guilt. A pocket watch belonging to the burglary victim was lawfully found on defendant's person. When the owner of the automobile was contacted after defendant's arrest, she gave the police permission to search the automobile. Additional evidence relating to the burglary was then uncovered. She also informed the police that defendant had made admissions to her concerning the burglary and had given her stolen coins. She supplied the names of persons to whom defendant had sold and delivered goods taken in the burglary. Those persons were contacted by the police and identified defendant as the source of the stolen goods. Finally, defendant's fingerprints matched those on a flour canister in the kitchen of the burglarized residence.

Those facts amount to overwhelming evidence of guilt. It is very unlikely, to say the least, that exclusion of the challenged evidence and statements would have changed the result. We conclude that, within the meaning of Article VII (amended), section 3, of the Oregon Constitution as interpreted and applied in *State v. Van Hooser, supra,* the error was harmless. *See State v. Mains,* 295 Or 640, 662-665, 669 P2d 1112 (1983).

Were it not for application of the harmless error rule, this case could be decided solely on the basis of the Oregon Constitution. However, the Oregon harmless error rule having been applied, we must turn to an analysis under the federal constitution to determine whether the Fourth Amendment was violated.

The search of the trunk did not violate defendant's Fourth Amendment rights because, regardless of whether the search was permissible under the rules stated in *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), or *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), the gun case inevitably would have been discovered. When contacted by the police, the owner of the car cooperated and informed them of various incriminating facts about defendant's activities and statements. She also consented to a search of the car. Evidence obtained through police misconduct is admissible under the Fourth Amendment if it is

established by a preponderance of the evidence that it inevitably would have been discovered by lawful means. *Nix v. Williams*, \_\_ US \_\_, 104 S Ct 2501, 81 L Ed 2d 377 (1984).[5]

■■■ The federal version of the inevitable discovery doctrine precludes defendant from contending that his federal constitutional rights were violated with respect to the search of the trunk. However, obtaining defendant's admissions was not inevitable. Even so, the properly admitted evidence was so overwhelming that the due process harmless error standard under *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967), is satisfied.[6]

Affirmed.

---

[5] ORS 133.683 provides in part:

"[Illegally seized] evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that [it] would have been discovered * * * irrespective of such search and seizure, and the court finds that exclusion * * * is not necessary to deter violations of ORS 133.525 to 133.703."

*See State v. Quinn*, 290 Or 383, 395, 623 P2d 630 (1981).

[6] Although we have recently cited *Chapman's* "harmless beyond a reasonable doubt" standard as if it applies under the Oregon Constitution, *see State v. Gainer*, 70 Or App 199, 204, 689 P2d 323 (1984), that assumption may not be correct. *State v. Mains, supra*, 295 Or at 664, contrasted the federal constitutional and non-constitutional harmless error rules "with our own harmless error rule *applicable to errors of state law*." (Emphasis supplied.) That strongly suggests that the *Van Hooser* standard is applicable to constitutional as well as non-constitutional error. *See also State v. Naylor*, 291 Or 191, 197 n 3, 629 P2d 1308 (1981).