Argued and submitted June 21, affirmed October 30, 1985

# STATE OF OREGON,
*Respondent,*

*v.*

# MONTE LEE NELSON,
*Appellant.*

(30936; 30937; CA A33379)

708 P2d 1153

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a criminal case in which defendant appeals his convictions for possession of a controlled substance (cocaine) and being an ex-convict in possession of a firearm. His sole argument on appeal is that the trial court erred in denying his motion to suppress evidence seized from his person (the cocaine) and from the van he was driving (the pistol) after a traffic stop. We affirm.

We take our statement of facts and most of our analysis from the excellent briefs filed by the parties. On January 27, 1984, at noon, Officer Haebe observed defendant driving through St. Helens in a van which lacked a front license plate. A radio check revealed the existence of several arrest warrants for traffic crimes for Joseph Schneider, the van owner, whose driver's license was also suspended. Haebe followed defendant several miles out of town and stopped him. After defendant stepped out of the van, Haebe mentioned the missing plate. Defendant responded that he was driving the van for "Rosie," to whom it belonged, and that she was driving a blue El Camino and travelling in their direction.

Haebe saw a syringe in defendant's jacket pocket. He asked if defendant was a diabetic or otherwise used injectable medicine. Defendant denied any knowledge about the syringe and handed it to the officer. Haebe asked if defendant had any marijuana. After saying, "No," defendant handed Haebe two bullets and a package of cigarette papers from the jacket. When asked who owned the coat, defendant answered:

> "[H]e didn't know. He told me somebody was trying to frame him. He told me all he was doing was driving the van for Rosie, and he could have got the wrong coat."

Haebe asked permission to search the coat. Defendant handed it to him, and he discovered a package containing a brown lumpy substance, which he suspected was cocaine or heroin.

Next, the officer asked for defendant's driver's license. Defendant tossed his license and the license and identification card of Laurie Ann Cox onto the hood of the patrol car. Haebe called the station for a record check on defendant. Cover Officers Conklin, Sauls and Heuth arrived at the scene. The dispatcher reported that an arrest warrant

based on a fraud charge was outstanding; defendant was arrested.

Haebe gave defendant the *Miranda* warnings and asked for consent to search the van. Defendant refused. Haebe and the other officers conferred and concluded that they had probable cause to search for drugs and that there were exigent circumstances requiring an inventory search before "Rosie," the claimed owner, arrived on the scene. The van was searched, and Officers Conklin and Sauls seized a Llama 9 millimeter semi-automatic, which was inside a closed container on the passenger side. The van was impounded and towed to DeBois.

Defendant was cited for the traffic infraction. Haebe took him to the local jail and police station. There, Haebe and Conklin field tested the brown substance without a warrant. Haebe believed that the substance "probably" was cocaine, even though he acknowledged that cocaine was usually white in color. Similarly, Conklin thought the substance was cocaine, even though he acknowledged that cocaine was generally "snow white" and not "lumpy." Defendant was later convicted of possession of both the gun and the drugs. This appeal followed.

■ Defendant first argues that Haebe improperly stopped his van. Defendant is wrong. He was driving a vehicle with no front license plate, a Class B traffic infraction under ORS 481.255. Haebe followed the van and determined by radio that the registered owner of the vehicle had a suspended driver's license and several outstanding arrest warrants. The stop was proper. *See State v. Fleming,* 63 Or App 661, 665 P2d 1235 (1983).

■ Defendant next criticizes the officer's conduct as an "exploratory" inquiry and challenges the right to carry out a record check. The latter point was recently decided contrary to defendant's position in *State v. Smith,* 73 Or App 287, 698 P2d 973 (1985), which involved a check to confirm identification and to ascertain the existence of any outstanding warrants. A record check commonly accompanies a traffic stop. The check in this case compares favorably with the three-to-five-minute procedure approved as reasonable in *Smith.* There was no error.

■■ Defendant next challenges the search of the jacket he gave to Haebe. It is a defendant's burden to establish a protected right in the particular item of property before he can challenge the alleged violation. *State v. Emery,* 41 Or App 35, 597 P2d 375 (1979). Defendant failed to meet that burden here. In his conversation with Haebe, defendant denied any interest in the syringe or the jacket he was wearing. When asked about the syringe, he said, "I have never seen this before. I don't know where it come *[sic]* from," and handed it to Haebe. Asked whose coat it was, defendant said that he did not know, that someone was trying to frame him, and that he could have got the wrong coat. He willingly turned it over to the officer. According to defendant, the van belonged to "Rosie," and all he was doing was driving it for her. In sum defendant denied any possessory or privacy interests in the coat and everything in it. Again, the court did not err.[1]

■ Even assuming, *arguendo,* that defendant had a cognizable interest in the jacket, he surrendered it by giving Officer Haebe permission to search. According to Haebe, "I asked him if we could search the coat," and defendant responded by taking it off and giving it to Haebe. Defendant's conduct manifested a valid consent to search, that is, a knowing, intelligent and voluntary waiver of his rights in the jacket. *See State v. Ragsdale,* 34 Or App 549, 579 P2d 286, *rev den* 283 Or 503 (1978); *State v. Radford,* 30 Or App 807, 568 P2d 692 (1977).

Defendant next challenges the search of the van and the discovery of the pistol. In several recent cases, this court has held that an arrest for possession of a controlled substance may permit a contemporaneous search of the passenger compartment of defendant's vehicle for further evidence of the crime. *See State v. Bennett,* 72 Or App 733, 697 P2d 213, (1985); *State v. Martin,* 71 Or App 1, 691 P2d 154 (1984); *State v. Kirsch,* 69 Or App 418, 686 P2d 446, *rev den* 298 Or 151 (1984). The decisions also hold that a search incident to arrest may extend to closed containers wherein the drugs or other evidence may be found. The fact that the arrested defendant may have been removed to the police car does not invalidate the search of the suspect vehicle. *State v. Fesler,* 68 Or App

---

[1] The state contested defendant's "standing" at the suppression hearing and so may raise the issue on appeal. *State v. McMurphy,* 291 Or 782, 635 P2d 372 (1982).

609, 685 P2d 1014, *rev den* 297 Or 547 (1984). The search meets the criteria described in those cases.

■ The search of defendant's jacket revealed a suspected controlled substance wrapped in a bindle. Under the circumstances, the officers had probable cause to believe that defendant possessed a controlled substance and therefore to arrest him for that offense. The fact that defendant was officially under arrest on a Marion County warrant did not affect the officers' right to search incident to an arrest for possession of a controlled substance. *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984). It was reasonable to believe that more contraband would be found in the van. The search of the passenger compartment, at least up to the discovery of the gun, was reasonable in scope and intensity and followed as one continuing process incident to the arrest, without passing a "logical stopping point." *State v. Kirsch, supra.* In the process of looking for narcotics, the officers found the Llama pistol in a leather bag on the passenger floorboard. Defendant does not suggest that, if the search was proper, seizure of the pistol was improper. The search was proper.[2]

■ As his last argument, defendant, citing *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), contends that the police should have obtained a search warrant before subjecting the controlled substance to a field test. *See also State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985). Defendant ignores the legal significance of his own acts. He voluntarily relinquished any interest in the substance when he turned the jacket over to Haebe; his actions were a specific denial of any property interest in the jacket or its contents. In *Lowry* and *Westlund,* the requirement that officers obtain a warrant before analyzing legally seized evidence makes some sense in that the officers should perceive that they are invading some protected property interest of the defendant. *See State v. Westlund, supra,* 75 Or App at 49-52. In the present case, however, defendant has denied any knowledge of or connection with the jacket and its contents. The officers did not commit a trespass as to him. To require that officers nonetheless obtain a warrant would be unreasonable.

---

[2] Defendant also argues that the impoundment and inventory of the vehicle were improper, but the state does not rely on an inventory theory.

Affirmed.