**Ronnie Dean STORM, and Wilburn Rolo Mansfield, Appellants,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–85–201, F–85–202.**

Court of Criminal Appeals of Oklahoma.

April 30, 1987.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellants.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

BUSSEY, Judge:

The appellants, Ronnie Dean Storm and Wilburn Rolo Mansfield, were tried and

convicted in the District Court of Tulsa County for two (2) counts of the crime of Robbery with Firearms After Former Conviction of Two or More Felonies in Case No. CRF–84–2645. Appellant Storm was found guilty of only one prior conviction and received ten (10) years imprisonment on each count. Appellant Mansfield was sentenced to fifty (50) years imprisonment on each count. The trial court ordered that the sentences be served consecutively. We affirm.

On June 12, 1984, the Holiday Hills Liquor Store in Tulsa, Oklahoma was robbed by the appellants. The appellants stole the clerk's wallet, approximately $327.00 from the cash register and three (3) bottles of whiskey.

On June 14, appellant Mansfield, who was driving a brown Lincoln Towncar in Collinsville, Oklahoma, was stopped by a police officer for driving in a reckless manner. When the officer ran a check on the vehicle's registration, he found that the license plate was stolen, and the officer asked Mansfield to exit the vehicle. As Mansfield got out of the car, the officer observed and seized a revolver laying in the front seat. A vehicle identification number check determined that the vehicle was stolen. As Alana Storm, a passenger in the vehicle, got out of the car the officer observed a black card case in the back seat. The case contained a credit card and another card was discovered under the back seat, both bearing the name Michael Champagne, the liquor store clerk. When Mansfield was questioned by Tulsa police officers, he acknowledged his participation in the robbery, but refused to name his accomplices. Latent fingerprints obtained from two (2) bottles of wine that were handled by one of the perpetrators in the liquor store matched fingerprints obtained from appellant Storm.

■ For their first assignment of error appellants assert that the arrest of Mansfield was improper and that the trial court erred in failing to quash the arrest and suppress all evidence arising therefrom. Appellants argue that Mansfield's detention for a moving violation was permissible; however, they allege that it was improper to detain him for ten (10) to fifteen (15) minutes while the officer ran a routine check on the license plate. Initially, we note that a police officer may arrest a person for any public offense committed in his presence. 22 O.S.1981, § 196. When the Collinsville police officer stopped Mansfield and restrained his liberty, he had arrested Mansfield. *Castellano v. State*, 585 P.2d 361, 364–365 (Okl.Cr.1978). He could have lawfully transported Mansfield to the police station and detained him for much longer than ten (10)–fifteen (15) minutes.

Moreover, in *Delaware v. Prouse*, 440 U.S. 648, 653–654, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660 (1979), the United States Supreme Court stated that:

The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions....' *Marshall v. Barlow's Inc.*, 436 U.S. 307, 312, 56 L.Ed.2d 305, 98 S.Ct. 1816 [1820] (1978), quoting *Camara v Municipal Court*, 387 U.S. 523, 528, 18 L.Ed.2d 930, 87 S.Ct. 1727 [1730] (1967). Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.

■ The intrusion on Mansfield's Fourth Amendment interests is very slight in the instant case. Mansfield was legally stopped for a traffic offense and was only detained for an additional ten (10)–fifteen (15) minutes beyond the time required to issue the citation.

The legitimate governmental interests on the other hand are substantial. The State has a strong interest in checking the tags and registration of vehicles that operate on its roads and highways. It is a common practice in most law enforcement agencies to conduct routine license checks and routine warrant checks when they stop individuals for traffic violations. When balancing this legitimate governmental interest

against the slight intrusion it produces, we find that the law enforcement practice of conducting routine license and warrant checks when a person is lawfully stopped for a traffic violation is clearly permissible. Any holding to the contrary would unduly hamper law enforcement efforts with little or no resulting benefit. We find no error.

■ The appellants' next contention deals with the trial court's failure to suppress Mansfield's confession. The facts surrounding the confession are as follows. Mansfield was arrested by a Collinsville police officer and the police officer presented Mansfield with a rights waiver at approximately 7:00 a.m. which he signed using the name Carl Horton. However, Mansfield refused to talk to the Collinsville police. Subsequently, Mansfield was transported to Tulsa and turned over to the Tulsa Police, but the Collinsville officer did not inform the Tulsa Police that Mansfield had refused to talk with him. At approximately 11:00 a.m. the Tulsa officer questioned Mansfield after he signed a rights waiver, and Mansfield readily confessed to the robbery. Appellants now argue that Mansfield's refusal to talk with the Collinsville police barred the subsequent questioning and confession in that it clearly violates *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We disagree.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the United States Supreme Court found that where there was a two (2) hour time period between questioning on two unrelated crimes; where the defendant was transported to a different part of the same building; where the police honored the defendant's refusal to submit to questioning; and where both interrogations were preceded by *Miranda* warnings, the admission in evidence of Mosley's incriminating statement did not violate the principles of *Miranda*. In the instant case there was a four (4) hour time period between the interrogations, the Collinsville officer honored Mansfield's refusal to talk and both officers preceded their questioning with *Miranda* warnings. Accordingly, we find that the trial court properly denied the motion to suppress the confession. This assignment of error is without merit.

■ In another assignment of error appellants argue that the trial court committed reversible error in admitting evidence of other crimes relating to the stolen tags, stolen car and stolen credit cards. We are of the opinion that the extraneous offenses are part of the entire transaction and must be admitted for the entirety of the criminal transaction to make sense to the jury. *Bruner v. State*, 612 P.2d 1375 (Okl.Cr. 1980). This assignment is groundless.

■ Appellant's fourth assignment of error is that the trial court committed reversible error in failing to give appellant Storm's requested instruction number two (2) which deals with aiding and abetting and principals. We disagree with this contention. The evidence presented at trial clearly established that appellant Storm was acting jointly with appellant Mansfield in robbing the liquor store. Storm's fingerprints were found at the scene of the crime, and the store clerk stated that both men were going through the cash registers.

Furthermore, the trial court's instructions required a separate finding of guilt on all elements as to each defendant on each count and fairly and accurately stated the applicable law. *Green v. State*, 611 P.2d 262 (Okl.Cr.1980). The trial court properly rejected the proffered instruction.

As their final assignment of error appellants maintain that the trial court abused its discretion in refusing to sentence them to concurrent sentences. This Court has repeatedly held that the decision to order sentences to run consecutively or concurrently is committed to the sound discretion of the trial court. *Lloyd v. State*, 654 P.2d 645 (Okl.Cr.1982). Finding no abuse of discretion, we decline to disturb the trial court's ruling.

Finding no error warranting reversal or modification, the judgments and sentences are AFFIRMED.

BRETT, P.J., and PARKS, J., concur.