**STATE of Utah, Plaintiff and Appellee,**

v.

**Jorge FIGUEROA–SOLORIO,
Defendant and Appellant.**

**No. 910170–CA.**

Court of Appeals of Utah.

March 25, 1992.

Richard G. Uday, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and David B. Thompson, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## AMENDED OPINION [1]

RUSSON, Judge:

Defendant Jorge Figueroa–Solorio appeals his conviction of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1990).

### FACTS

On January 1, 1991, Salt Lake City Police Officers B.L. Smith and Louis Jones observed defendant cross State Street at approximately 916 South in Salt Lake City. There is no crosswalk or traffic light at that location. Accordingly, the officers decided to issue a jaywalking citation to defendant, pursuant to Utah Code Ann. § 41–6–79 (1988) of the Motor Vehicle Act.

Officers Smith and Jones approached defendant, who had gotten into a parked car. They asked defendant to get out of the car and then asked for identification. The defendant said that he did not have any I.D., but wrote his name in Officer Smith's notebook when requested to do so. Officer Smith went to his patrol car to check his warrants book for any outstanding warrants for defendant's arrest. Having found an outstanding warrant for defendant's arrest listed in the warrants book, Officer Smith then verified the existence of the warrant with a computer check. The detention lasted a total of two to three minutes.

Defendant was placed under arrest based on the outstanding warrant, and a search incident to arrest revealed a controlled substance on his person. Defendant was charged with possession of a controlled substance with the intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(iv) (1990). Defendant moved to suppress evidence of the controlled substance found during the search incident to his arrest, which motion was denied. Defendant then entered a plea of guilty to a reduced charge of possession of a controlled substance, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1990), conditional upon preserving the right to appeal the denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 938 (Utah App.1988).

The issues presented on appeal are whether the trial court erred in denying defendant's motion to suppress (1) on the basis of the trial court's conclusion that the stop of defendant was not a pretext stop, and (2) on the basis of the trial court's determination that the police officer's actions did not exceed the scope of the purpose of the original stop.

## I. PRETEXT STOP ANALYSIS [2]

As a preliminary matter, defendant's argument that the test for pretext established in *State v. Sierra*, 754 P.2d 972 (Utah App.1988), *disavowed on other grounds, State v. Arroyo*, 796 P.2d 684, 689–92 (Utah 1990), should be applied to the facts in this case must be addressed. The *Sierra* test is derived from the following language in *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978): "would the facts available to the officer at the moment of the seizure or the search 'warrant [an officer] of reasonable caution in the belief' that the action taken was appropriate?" *Sierra*, 754 P.2d 972 at 977–78 (quoting *Scott*, 436 U.S. at 137, 98 S.Ct. at 1723). Thus, the *Sierra* court reasoned that in traffic stop cases the "focus [is] on whether a hypothetical reasonable officer, in view of the totality of the circumstances confronting him or her, *would* have stopped [the defendant] to issue a [citation]." *Sierra*, 754 P.2d at 978 (emphasis in original).

*Sierra* is inapplicable to the facts in this case for several reasons. First, the fact that the *Scott* test focuses on whether an

1. This opinion replaces the opinion of the same name issued March 19, 1992 (182 Utah Adv.Rep. 57).

2. As to the issue of whether Officer Smith's stop of defendant was a pretext stop, Judge Orme's concurring opinion, in which Judge Billings has joined, represents the opinion of the court.

officer's suspicion of criminal activity is reasonable raises serious questions as to its applicability in traffic stop cases. The result in *Scott* focused on the determination of whether the officer had a reasonable suspicion of criminal activity in light of the facts known to him at that time. Put differently, did the circumstances, viewed objectively, justify the action taken? *Scott*, 436 U.S. at 137–38, 98 S.Ct. at 1723.

That question will always be answered in the affirmative in traffic stop cases because issuance of a citation is *always* justified when the officer observes a statute being violated. It is a police officer's sworn duty to enforce all laws passed by the legislature, including traffic laws. Utah Code Ann. § 41–1–17 (1988) of the Motor Vehicle Act provides:

> The commission, and such officers and inspectors of the department as it shall designate, peace officers, state patrolmen, and others duly authorized by the department or by law shall have power and *it shall be their duty:*
>
> (a) To enforce the provisions of this act and of all other laws regulating the registration or operation of vehicles or the use of the highways.
>
> (b) To make arrests upon view and without warrant for any violation committed in their presence of any of the provisions of this act or other law regulating the operation of vehicles or the use of the highways.
>
> (c) When on duty, upon reasonable belief that any vehicle is being operated in violation of any provision of this act or of any other law regulating the operation of vehicles to require the driver thereof to stop, exhibit his driver's license and the registration card issued for the vehicle and submit to an inspection of such vehicle, the registration plates and registration card thereon.

*Id.* (emphasis added). Thus, police officers have no discretion as to which laws would be reasonable to enforce. Such action is appropriate whenever an officer suspects that the driver is violating one of the applicable traffic regulations. *State v. Marshall*, 791 P.2d 880, 883 n. 3 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990); *State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990); *accord State v. Sanders*, 154 Ga.App. 305, 267 S.E.2d 906 (1980); *Braxton v. State*, 234 Md. 1, 197 A.2d 841 (1964); *Anderson v. State*, 444 P.2d 239 (Okla.Crim.1968).

Also, police officers cannot be expected, upon observing a violation of law, to make a legal determination as to whether or not a "reasonable officer" would arrest the violator. Even those cases in which the *Sierra* test has been successfully met do not establish a standard by which the State can prove that a hypothetical reasonable officer would stop the vehicle. *See State v. Lovegren*, 798 P.2d 767, 771 n. 10 (Utah App.1990) (the fact that the officer at hand often makes such arrests is the determining factor); *Marshall*, 791 P.2d at 883 (the fact that other jurisdictions had held under similar circumstances that a reasonable officer would make such stop is determinative); *State v. Smith*, 781 P.2d 879, 883 (Utah App.1989) (the trial court's decision that the violation in question "is the type of clear cut traffic violation for which officers routinely stop citizens and issue citations" is sufficient). Thus, it is simply unreasonable to expect the police to make on-the-spot judgments on this difficult legal question.

Additionally, the *Sierra* requirement that only those laws that "reasonable officers" would implement are enforceable impermissibly limits an officer's ability to perform his job:

> [T]he enforceability of state laws [cannot] depend upon the diligence by which police officers usually enforce such laws. Otherwise, derelict officers would set the standard by which laws would be enforced and thus limit diligent officers in performing their duty.... To allow police officers to decide which laws should or should not be enforced would destroy the uniform application of laws throughout the state, since what might appear reasonable to officers in one part of the state might appear different to officers in other parts of the state. Accordingly,

while the stopping of a vehicle merely to confirm or deny a "hunch," *see Talbot*, 792 P.2d at 491–92 n. 6, cannot be condoned, neither can it be left to police officers to determine which traffic laws it would be reasonable to enforce.

*State v. Lopez*, 186 Utah Adv.Rep. 16, 25–26 (Utah App.1992) (Russon, J., concurring in part and dissenting in part).

Lastly, *Sierra* creates a separation of powers problem by permitting the police or the courts to decide what laws are reasonable enough to enforce. While

it is the judiciary's responsibility to determine the constitutionality of the laws, it is not within the province of the executive branch or judicial branch to say whether those laws are reasonable. Such is clearly an invasion of the legislature's jurisdiction. "[I]t is not our prerogative to question the wisdom, social desirability, or public policy underlying a given statute. Those are matters left exclusively to the legislature's judgment and determination."

*Id.* at 26 (quoting *Condemarin v. University Hosp.*, 775 P.2d 348, 377 (Utah 1989) (Hall, J., dissenting)). *See also Utah Manufacturers' Ass'n v. Stewart*, 82 Utah 198, 23 P.2d 229, 232 (1933) ("fairly debatable questions as to reasonableness, wisdom, or propriety [of legislative action] are not for the courts, but for the Legislature"). Thus, the principle of separation of powers is clearly violated by allowing the police or the courts to determine whether it is reasonable to enforce any law duly passed by the legislature. Accordingly, *Sierra* should not be applied to cases such as this.[3]

## II. SCOPE ANALYSIS

The Fourth Amendment to the United States Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. It follows that "people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalk." *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Thus, the Supreme Court has held that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry*, 392 U.S. at 16, 88 S.Ct. at 1877.

■ However, the Fourth Amendment does not prohibit all seizures, but only *unreasonable* ones. *Id.*, 392 U.S. at 9, 88 S.Ct. at 1873. Under *Terry*, the determination of whether a seizure is reasonable involves a two-pronged test: (1) Was the officer's action justified at its inception?, and (2) Was his action reasonably related in scope to the circumstances which justified the interference in the first place? *Id.*, 392 U.S. at 19–20, 88 S.Ct. at 1879; *accord State v. Robinson*, 797 P.2d 431, 435 (Utah App.1990).

**3.** However, there are cases in which pretext is relevant and must be considered. These cases differ from the case at bar in one significant aspect: a finding by the trial court that actually no violation occurred or that the stop was admittedly made for reasons other than the traffic violation. Thus, in cases such as *State v. Arroyo*, 796 P.2d 684, 688 (Utah 1990), where no violation occurred, pretext can be thereby established by the absence of a legitimate cause to stop the vehicle. Here, however, the undisputed testimony of Officer Smith is that defendant was guilty of jaywalking. *Compare id.; see Talbot*, 792 P.2d at 491–92 (pretext analysis used when no indication that defendants were stopped for any traffic violation and when stop was in fact made for other reasons); *State v. Baird*, 763 P.2d 1214, 1217 (Utah App.1988) (pre-

text analysis used when facts demonstrate that the driver did not commit a traffic violation); *Sierra*, 754 P.2d at 979 (pretext analysis used when no indication in record that defendant had violated any traffic statutes); *see also United States v. Smith*, 799 F.2d 704, 706 (11th Cir.1986) (officer admitted that he did not stop the vehicle because it "weaved," but because of his reliance on a "drug courier profile"); *Kehoe v. State*, 521 So.2d 1094, 1095 (Fla.1988) (officer admitted that he stopped the vehicle primarily because he was told by another officer to do so, not because of a traffic violation); *Tarwid v. State*, 184 Ga.App. 853, 363 S.E.2d 63, 64–65 (1987) (officer admitted that at the time of the stop, defendants were not committing any traffic violations).

■ The first prong, whether the stop was justified at its inception, is easily satisfied since jaywalking is prohibited by Utah Code Ann. § 41-6-79 (1988) of the Motor Vehicle Code. Whenever an officer suspects that a person is violating any one of the multitude of applicable traffic regulations, the police officer may legally stop that person. *State v. Marshall*, 791 P.2d 880, 883 n. 3 (Utah App.), *cert. denied*, 800 P.2d 1105 (Utah 1990); *accord Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977); *State v. Talbot*, 792 P.2d 489, 491 (Utah App.1990). Thus, Officer Smith's stop of defendant was clearly justified at its inception.

However, Officer Smith's actions must also be reasonably related in scope to the stop of defendant for the aforementioned traffic violation. This determination rests on whether Officer Smith was justified in running a warrants check on defendant without further evidence of criminal activity on defendant's part, an issue of first impression in Utah. The Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) provides some guidance on this issue. In *Summers*, the Court held that an officer may communicate with others, either police or private citizens, in order to verify the identification of the individual stopped or to learn whether that individual is "otherwise wanted," unless doing so makes the period of detention unduly long. *Id.*, 452 U.S. at 700-01 n. 12, 101 S.Ct. at 2593 n. 12 (quoting 3 LaFave, Search and Seizure § 9.2, pp. 36-37 (1978)). As to the length of a permissible detention, the Court has held that the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Similarly, in *State v. Johnson*, 805 P.2d 761, 763 (Utah 1991), the Utah Supreme Court held that the length and scope of a detention for a traffic violation "must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.* at 763 (quoting *Terry*, 392 U.S. at 19-20, 88 S.Ct. at 1879). Moreover, the *Robinson* case held that an officer conducting a routine

traffic stop may conduct a computer check. *Robinson*, 797 P.2d at 435 (citing *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988)). Although *Robinson* did not address the specific question of whether running a warrants check is permissible, conducting a computer check most certainly can be read to include a warrants check.

■ Furthermore, several other jurisdictions have considered the question of whether conducting warrants checks during the course of a traffic stop is permissible, and have determined that such action is permissible so long as it does not significantly extend the period of detention. *See, e.g., United States v. Contreras–Diaz*, 575 F.2d 740, 744-45 (9th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); *State v. Ybarra*, 156 Ariz. 275, 751 P.2d 591, 592 (1987); *Storm v. State*, 736 P.2d 1000, 1001-02 (Okla.Crim.App.1987); *State v. Nelson*, 76 Or.App. 67, 708 P.2d 1153, 1155 (1985); *State v. Smith*, 73 Or. App. 287, 698 P.2d 973, 976 (1985) (citations omitted); *Petty v. State*, 696 S.W.2d 635, 638-39 (Tex.App.1985); *cf. United States v. Luckett*, 484 F.2d 89, 90-91 (9th Cir.1973) (evidence inadmissible because running warrants check extended detention beyond scope of original reason for stop). We find this authority persuasive, and adopt the rule that running a warrants check in the course of a traffic stop is permissible, so long as it does not significantly extend the period of detention beyond that reasonably necessary to effectuate the original purpose of the stop.

■ Applying this rule to the case at bar, we hold that since the warrants check was conducted within the course of Officer Smith's stop of defendant for jaywalking, it did not exceed the scope of that stop, and was therefore permissible. Although the length of a detention is not dispositive of the question of its reasonableness, the fact that the entire pre-arrest detention in the case at bar lasted only two to three minutes also indicates that it was reasonable. Moreover, although Officer Smith had prior knowledge of criminal activity occurring in the area in which defendant's traffic violation occurred, this "does not insulate the

defendant from being stopped for a traffic violation." *State v. Smith*, 781 P.2d 879, 883 (Utah App.1989) (citing *State v. Tucker*, 286 Or. 485, 595 P.2d 1364, 1368–70 (1979)). Lastly, the fact that the officers did not cite defendant for jaywalking is not significant, since Officer Smith's undisputed testimony is that his reason for not doing so was simply that he did not think it was necessary in light of the outstanding warrant for defendant's arrest. Accordingly, we hold that Officer Smith's stop of defendant was proper, and the subsequent seizure incident to arrest was valid.

### III. CONCLUSION

In light of *Terry* and its progeny, it is clear that, in the course of a routine traffic stop, police officers may take those actions that are reasonably within the scope and duration of the original stop. Thus, in the case at bar, Officer Smith's stop of defendant for jaywalking was proper, as was the warrants check made within the duration of such stop, as was the arrest based on the warrant, and therefore the subsequent search incident to arrest of defendant and seizure of the controlled substance found on his person was valid. Accordingly, the trial court's order denying suppression of the evidence is affirmed.

ORME, Judge (concurring in part and concurring in the result in part):

Judge Billings and I agree that the conviction appealed from should be affirmed. However, while we concur in section II of the opinion, we do not join in section I. Concerning the pretext doctrine, we instead adhere to the views we recently expressed in *State v. Lopez*, 181 Utah Adv.Rep. 41, 1992 WL 41598 (Utah App.1992).

▉ Applying the *Lopez* analysis to the facts of this case, it is clear that officers Smith and Jones did not ticket defendant as a pretext while acting on an unconstitution-

al motivation. *See State v. Sierra*, 754 P.2d 972, 977–78 (Utah App.1988), *disavowed on other grounds, State v. Arroyo*, 796 P.2d 684 (Utah 1990). Officer Smith testified that he began writing jaywalking tickets in October of 1990, after witnessing an incident in which a jaywalker almost caused a vehicular accident in the 900 block of South State Street.[1] Further, the record shows that, in the two- to three-month period between his observation of the near accident and his stop of defendant, Smith had written approximately one dozen jaywalking tickets. These facts demonstrate that Officer Smith's stop of defendant was prompted by a desire to reduce jaywalking in the area; it was not a pretext to pursue some hunch the officers had about defendant.

"Although the pretext question does not turn on the arresting officer's subjective motivation, a trial court may consider the officer's testimony as to why the officer stopped the car and whether such stop is consistent with his usual practice." *Lopez*, 181 Utah Adv.Rep. at 45. In a case such as the instant one, where a police officer's actions are consistent with a legitimate course of conduct adopted after specific observations or experiences have brought valid concerns to the officer's attention, we believe the officer's uncontroverted subjective motivation should be afforded particular significance. An objectively reasonable police officer who has not witnessed the potential dangers of jaywalking firsthand may be less likely to stop individuals for the offense than an objectively reasonable officer who has recently observed a traffic accident caused by a jaywalker, and who has thereafter embarked upon a consistent course of jaywalker-nabbing.

In the instant case, Officer Smith's stop of defendant was consistent with a course of conduct Smith had pursued ever since witnessing a jaywalker almost cause a traffic accident in the recent past at approxi-

---

1. At the time of defendant's stop, Officer Jones was working as a trainee under Officer Smith's supervision. Given the subordinate position trainees occupy vis-a-vis training officers, it should be assumed that Officer Jones's motivation in ticketing defendant was simply that of a trainee following the lead of an instructor. Accordingly, in determining whether a violation of the pretext doctrine occurred, we concentrate only on Officer Smith's motivation in stopping defendant.

mately the same place. Given the understandably sensitizing effect of such an experience, the demonstrated effect the experience did in fact have on Officer Smith's treatment of jaywalkers, and the lack of any evidence offered by defendant to counter the objectively reasonable nature of Officer Smith's conduct, it is clear on the record before us that Officer Smith's actions were not pretextual. Accordingly, while we disagree with Judge Russon's refusal to apply *Sierra* to the facts of this case, we agree defendant's conviction should be affirmed. We hold that Officer Smith's actions were constitutional under *Sierra* as clarified by *Lopez.*

BILLINGS, J., concurs.