Argued and submitted March 31, 1999, reversed and remanded in part; otherwise affirmed March 8, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## STEVEN LEE CAMPBELL,
*Appellant.*

## (97CR1130; CA A99819)

999 P2d 466

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals convictions for possession of a controlled substance, ORS 475.992, and supplying contraband, ORS 162.185. He argues that the trial court erred by denying his motion to suppress methamphetamine found in his cigarette pack and denying his motion for a directed verdict of acquittal on the supplying contraband charge. We reverse in part.

Defendant's vehicle was stopped by a police officer after defendant made a turn without signaling. Defendant immediately left his car and met the approaching officer. The officer explained to defendant the reason for the stop and asked him for his driver's license. Defendant said that he didn't have a driver's license and presented an identification card. The officer contacted the dispatcher to ascertain whether defendant could lawfully drive. While the officer was waiting for a response from dispatch, defendant's demeanor began to concern him. He testified:

> "I was talking with [defendant], and he appeared to be very nervous. He continually kept looking from his left to his right in what appeared to be an attempt to find a way to run. When I say he was looking back and forth, I mean he'd look to his right, and he'd immediately look back to his left, and he'd look through me like kind of trying to see what was out past me. His feet were continually moving the entire time. He wouldn't just sit there and just talk with me. He had very rapid speech and he appeared to be very nervous.

> "* * * * *

> "While I was still waiting for the return, [defendant] had on a jacket and he kept sticking his hands in his pocket. I kept asking him to take his hands out and keep them out where I could see. I asked several times and each time after I requested it, he would just casually put them back in his pocket.

> "I asked [defendant] if he had any knives, needles, weapons, bazookas, or anything like that on him, and he stated he had a pocket knife. I told [defendant] to take his hands back out of his pockets again. I could see that there was two lumps in his front pockets. I reached over and I

could feel the lumps. I asked him what the lumps were and he stated that they were cigarettes—cigarette packs."

The officer testified further,

"I asked [defendant] to remove the one on the right hand side first so I could feel his coat to see if the knife—what he considered a pocket knife was behind it or if there were any weapons behind the cigarettes that I couldn't feel in his pockets. When [defendant] pulled out the cigarette pack, he immediately reached out and handed it to me and I just took it out of his hands, opened it up, looked at it, and I handed it back to him."

He was then asked whether he intended to search the cigarette pack. The officer replied,

"No. I just wanted to search—to feel behind the cigarette pack —what was in his pocket, because he kept putting his hands in his pockets. I wanted to make sure that—

"What some people consider a pocket knife and what I consider a pocket knife might not be the same. What [defendant's] idea of a pocket knife might be—like a three- or four-inch blade or something like that. I wanted to make sure he's not reaching in there and getting his hands on some weapon that's going to hurt me.

"When I asked him to pull the cigarettes out, all I wanted him to do was pull the cigarettes out and let me feel the pocket again. Then he could have put the cigarettes right back in. That's all I wanted.

"After [defendant] initially pulled the cigarette pack out, I immediately reached over, felt the pocket, and didn't feel anything in it; but he was handing the cigarettes out to me so I took them from him.

"The same thing happened on the * * * left side. I asked him what was in the other pocket. He said, 'Cigarette packs.' I asked him to remove them. He pulled them out. Once again he handed me the pack. I took the pack from him. As soon as I opened it up I saw a white, zip-lock baggie that was clear and it had white powder in it. From my training and experience, I realized it was probably the drug known as methamphetamine."

Based on the officer's discovery, defendant was arrested and transported to the county jail. At the jail, he was

taken into the booking area. It was explained to defendant that if any other controlled substances were found in his clothing, then he could be charged with violating ORS 162.185. The officer asked defendant "if he had any other illegal substances on him. [Defendant] stated he didn't have anything else on him." While defendant was being booked, his clothing was searched, and a deputy found a marijuana pipe with marijuana in the bowl that led to the charge of supplying contraband.

■     In his first assignment of error, defendant argues that the circumstances at the scene of the stop did not justify the officer's concern for his safety and that, even if they did, the officer was not authorized to ask defendant to remove the cigarette packages from his jacket under the rule of law that permits officers to do a limited search for their and others' safety. The analysis of those arguments begins with ORS 131.625. That statute provides:

> "(1)   A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and dangerous to the officer or other persons present.
>
> "(2)   If, in the course of the frisk, the peace officer feels an object which the peace officer reasonably suspects is a dangerous or deadly weapon, the peace officer may take such action as is reasonably necessary to take possession of the weapon."

Before the officer conducted his search, defendant told him that he had a "pocket knife." At the hearing, the officer demonstrated how a pocket knife could easily be opened with one hand. In light of that circumstance, defendant's demeanor and his repetitive actions of putting his hands in his pockets despite being asked not to do so, we hold that the officer had a reasonable suspicion that defendant was armed and presented a danger to the officer. The closer question concerns the implications of the officer opening the cigarette pack in which the methamphetamine was found during the search for weapons.

■■     The officer's testimony is clear that he did not open the cigarette pack because he believed that the pocket knife

might be hidden in it, and we agree that, under the circumstances, his action was not "reasonably necessary to take possession of the weapon." Consequently, ORS 131.625 does not authorize the opening of the cigarette pack. However, ORS 131.625 does not define "the outer limits of permissible officer safety measures in the context of a stop." *State v. Rickard*, 150 Or App 517, 525, 947 P2d 215, *rev den* 326 Or 234 (1997). Rather, Article I, section 9, of the Oregon Constitution, circumscribes officer safety measures in the context of a stop by principles of reasonableness. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The consideration under section 9 includes both the nature and extent of the perceived dangerousness as well as the degree of intrusion or restraint, keeping in mind that we are not to "uncharitably second-guess" on-scene decisions of officers who work under potentially dangerous or deadly circumstances. *Id.* In this case, the record reveals no perception by the officer that the contents of the cigarette pack represented a potential danger.

■       The trial court did not view the opening of the cigarette pack as a search for officer safety either. Rather, it ruled,

> "The officer only asked the defendant to remove cigarettes from the defendant's coat pockets. He did not ask to see them because he only wanted to pat the pockets after the cigarettes were removed. The defendant's handing the cigarettes to the officer manifested a consent to search the cigarette packs. This is especially true in regards to the second pack because the defendant witnessed the officer looking into the first pack and did not object." (Citations omitted.)

We are not persuaded that the trial court's ruling is supported by the evidence. The officer did not ask for defendant's permission when he seized the cigarette packs, nor did he testify that he made a request to search them before he looked inside them. The officer testified, "I could see that [defendant] was putting his hands behind the cigarettes each time." He explained,

> "I instructed him which hand to put in first for officer-safety reasons. I don't want him reaching in at both times — or at the same time reaching and pulling two things out. I

want to be able to watch his hands each time. So I have him keep one hand out, reach into his pocket, remove the cigarettes. What I was expecting him to do was to reach in, pull them out, hold them out of the side so I could feel what was behind the cigarettes. Once I—but instead of him holding them out to the side, he reached out and put it in front of me as a gesture to hand it to me.

"Once I looked through that, he started back in there, and I asked him to do the opposite side."

Defendant testified that he handed the cigarette packs to the officer because "[h]e asked me for them."

■ Defendant had a protected privacy interest under section 9 in the contents of the cigarette packages. Although it was permissible for the officer for safety purposes to ask him to remove the packages from his jacket or to seize them temporarily so that the officer could complete his search of the jacket for weapons, there is nothing in the facts of this case that supports the trial court's conclusion that defendant expressly or implicitly consented to the officer inspecting the contents of the packages. Rather, defendant's delivery of the cigarettes to the officer was a product of the officer's exercise of his authority. The trial court erred by not suppressing the evidence of methamphetamine found in the cigarette pack.[1]

■ After the state rested, defendant moved for an acquittal on both charges. As to the possession charge, he renewed his motion to suppress. As to the supplying contraband charge, he told the trial court "there isn't enough evidence that what was in the pipe was marijuana" to go to the jury. He also said, "there isn't enough evidence that [defendant] knowingly had this pipe for it to go to the jury." On appeal, defendant argues, "the trial court erred by denying

---

[1] The trial court relied on our holding in *State v. Nelson*, 76 Or App 67, 71, 708 P2d 1153 (1985). In *Nelson,* the officer asked the defendant "if we could search the coat." The defendant responded by taking his coat off and giving it to the officer. We held that the defendant's conduct manifested his consent to search. Here, defendant's delivery of the cigarette pack was not preceded by a request to search. The trial court also relied on our holding in *State v. Allen*, 104 Or App 519, 522, 802 P2d 91 (1990), *rev den* 311 Or 261 (1991). In *Allen*, the search of a metal container within a purse was preceded by a request to search to look inside the purse. The defendant said that "she did not care," and voiced no further objection when the metal container was opened.

defendant's motion for judgment of acquittal because defendant did not voluntarily 'introduce' contraband into the jail."[2] According to defendant, the officer's arrest compelled the introduction of the marijuana into the correctional facility. The issue raised by defendant on appeal was not preserved below, and therefore, we decline to consider it. ORAP 5.45(2). Moreover, defendant did not argue below, nor does he argue on appeal that his conviction for supplying contraband is infirm because it is the product of the illegal search of his cigarette pack.

Conviction for possession of a controlled substance reversed and remanded; otherwise affirmed.

---

[2] ORS 162.185 makes it unlawful to "knowingly introduce any contraband into a correctional facility[.]"