**STATE of Utah, Plaintiff and Appellant,**

v.

**Mark TALBOT, Defendant and Appellee.**

No. 880342–CA.

Court of Appeals of Utah.

May 9, 1990.

Patrick B. Nolan, Panguitch, for plaintiff and appellant.

Marcus Taylor, Richfield, for defendant and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

The state appeals from a circuit court order suppressing evidence obtained following a stop and search of defendant's

vehicle. A sheriff's posse had stopped the vehicle because it avoided a roadblock. We affirm.

## FACTS

On June 20, 1987, at approximately 12:15 a.m., a roadblock was established by the Garfield County Sheriff and his posse on the Panguitch Lake road, three miles outside of Panguitch, Utah. The stated purpose for the roadblock was to stop all vehicles traveling on the road in either direction and check for driver's licenses and vehicle registrations. The roadblock was effected by parking one vehicle on each side of the road, facing in opposite directions. These vehicles were equipped with red and blue grill lights, red spotlights, and yellow emergency flashers, all of which were activated. No signs, flares, or other devices were employed by the sheriff to advise oncoming traffic of the roadblock.

At 1:00 a.m., the sheriff and his posse observed the headlights of a vehicle heading south toward the roadblock. As the vehicle crested a hill approximately one-quarter mile away, it stopped abruptly, turned around in the middle of the road, and headed back north. Because of darkness and distance the officers at the roadblock could not identify the vehicle, much less its occupants or contents. Concluding the vehicle's occupants were attempting to avoid the roadblock, the sheriff ordered two posse members to "pursue the vehicle and check driving pattern and to make a stop of the vehicle." At the suppression hearing, the sheriff testified that when he gave the order he had "no idea what crime, if anything, had been committed."

The posse followed defendant's vehicle in a private pickup truck owned by one of the citizen members of the posse. The testimony at the suppression hearing failed to conclusively establish what official indicia of police authority the pickup displayed or whether the red flashing lights mounted either on or inside the front grill were activated during the pursuit.[1] The posse eventually caught up with the vehicle and followed it into Panguitch. According to the posse members, the vehicle's driving pattern was good and the driver did not commit any traffic violations.

During their pursuit, the posse established radio contact with officers patrolling in Panguitch. A discussion ensued as to whether the posse had "probable cause"[2] to stop the vehicle. The officers concluded that the posse had probable cause and the patrol officers agreed to assist in the stop.

The posse truck, defendant's vehicle, and the patrol officers, who were driving a regular police vehicle, converged in Panguitch. It is undisputed that defendant's vehicle stopped as soon as the patrol vehicle's red lights were engaged. Defendant and two juveniles were in the vehicle. Defendant was riding as a passenger. The officers found alcohol, marijuana, and an owl claw during their subsequent search of the vehicle. Defendant was arrested and jailed and his vehicle was impounded. Subsequently, an information was filed charging defendant with a host of offenses: contributing to the delinquency of and supplying alcohol to a minor, possession of a controlled substance and related paraphernalia, threatening a peace officer, allowing an unlicensed driver to drive, possession of an open container, public intoxication, and unlawful possession of protected wildlife.[3]

Defendant filed two separate motions to suppress all evidence obtained following

---

1. No matter what indicia of official police authority the pickup truck actually exhibited, the only indicia that the occupants of defendant's vehicle would have recognized while being pursued would have been the red grill lights, and only if they were activated. Two patrol officers who assisted the posse in apprehending defendant's vehicle in Panguitch testified that they did not remember seeing the red grill lights on the pickup activated at any time.

2. Clearly, the posse did not need "probable cause" to stop this vehicle, but rather a less exacting "reasonable suspicion." *See, e.g., State v. Constantino*, 732 P.2d 125, 126 (Utah 1987).

3. The owl claw appears to have been the basis for both the protected wildlife and drug paraphernalia charges. It is not clear from the record how an owl claw could form the basis of a drug paraphernalia charge.

the stop. First defendant argued the roadblock itself was illegal. Second, he argued the stop itself was illegal even if the roadblock was not. Following an evidentiary hearing, the circuit court held the roadblock was in fact legal.[4] However, the court granted defendant's second motion to suppress, holding that at the time of the stop the posse did not have a "reasonable suspicion" that the occupants of defendant's vehicle were somehow involved in criminal activity.

The state raises three arguments on appeal. First, it argues that "fleeing" from the roadblock created an articulable suspicion that the occupants of the vehicle had committed or were in the act of committing an offense, and thus the vehicle was lawfully seized. Second, the state argues that the occupants of the vehicle were lawfully seized because the driver of the vehicle committed several traffic violations in the officers' presence. Finally, the state argues that, even assuming the seizure was improper, defendant consented to the search, thereby purging the taint of any illegality of the seizure. The consent argument was raised for the first time on appeal and, accordingly, we decline to address it. *See, e.g., Lopez v. Shulsen,* 716 P.2d 787, 788–89 (Utah 1986).

## I. SEIZURE GENERALLY

The state has not disputed, and it is now beyond question, that stopping a vehicle and detaining its occupants is a Fourth Amendment seizure regardless of the reason for the stop or the brevity of the detention. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). *See also State v. Sierra,* 754 P.2d 972, 975 (Utah Ct.App.1988). Moreover, the seizure may ordinarily be justified only if the stop was 1) incident to a traffic offense or 2) based at least upon a reasonable and articulable suspicion that the occupants had committed or were about to commit a crime. *State v. Marshall,* 791 P.2d 880, 881–883 (Utah Ct.App.), *cert. filed,* 133 Utah Adv.Rep. —— (Utah 1990); *Sierra,* 754 P.2d at 975. Unless we are convinced that the stop in this case falls under one of these justifications, we will affirm the lower court's decision.

## II. STOP FOR TRAFFIC VIOLATIONS

As previously stated, a stop is lawful if incident to a traffic violation committed in the officers' presence. *Marshall,* 791 P.2d at 881–883; *Sierra,* 754 P.2d at 975. However, a technical violation may not be used as a pretext to search for evidence of a more serious crime. *See Marshall,* 791 P.2d at 881–883; *Sierra,* 754 P.2d at 977. The state argues on appeal that the defendant's vehicle committed at least three traffic violations in the officers' presence which justified the stop.[5] But even assuming that the defendant's vehicle in fact committed the traffic violations as the state argues,[6] the stop was obviously not *incident* to those violations.

---

4. The legality of random stops pursuant to roadblocks is currently under consideration by the United States Supreme Court. *Michigan Dep't of State Police v. Sitz,* No. 88–1897, 46 Crim.L. Rep. 3177 (1990) (oral argument held 2/27/90). Utah appellate courts have not squarely addressed whether roadblocks are constitutional under either the United States or Utah constitutions. However, defendant has not challenged the legality of the roadblock on appeal and we accordingly have no occasion to consider the issue. For a scholarly and detailed look at the constitutionality of sobriety roadblocks in their Utah context, see Davis & Wallentine, *A Model For Analyzing the Constitutionality of Sobriety Roadblock Stops in Utah,* 3 B.Y.U.J. Pub.L. 357 (1989).

5. The state argues on appeal that the U-turn was improper as violating Utah Code Ann.

§ 41–6–67 (1988), that the failure to stop at the road block violated Utah Code Ann. §§ 41–6–13 and –13.5 (1988), and that the subsequent failure to stop when pursued by the posse again violated §§ 41–6–13 and –13.5.

6. Because of our holding, we need not decide whether defendant's vehicle did in fact commit the traffic violations. We note, however, that the trial court's conclusion that the state presented no evidence of an illegal U-turn and that §§ 41–6–13, –13.5 did not apply to the turn a quarter mile before the road block and thus were not violated on that basis. These conclusions appear sound on the record before us. Moreover, the record was far from clear that defendant and his companions received a clear and unambiguous indication from the posse vehicle to stop prior to when they did stop. Even assuming, however, that they received such an indica-

All of the state's evidence at the suppression hearing demonstrated that defendant's vehicle was not—initially or subsequently—pursued, nor was it stopped, for any traffic violation. Sheriff Judd, the officer in charge of the road block, testified at the suppression hearing that when he directed the posse to pursue and stop defendant's vehicle he "had no idea what crime, if anything, had been committed." Moreover, one of the posse members testified that while pursuing the vehicle he "didn't observe any traffic violations." Instead, defendant's vehicle was stopped because the patrol officers believed avoiding the road block created "probable cause" to stop the vehicle. This fact is born out by the conversation between a posse member and the officers on patrol in Panguitch concerning the existence of probable cause. At the suppression hearing the patrol officer testified:

[The posse member] explained to me that the Datsun pickup had turned from the road block and had headed back down the hill and that he was following it and he wondered if he had probable cause, the way he put it, to pull the vehicle over.

I explained to him that, if it was me that was following the truck and I had seen it turn from the road block, that I would believe we would have probable cause to pull the vehicle over because I would think there was something wrong in the reasoning that the vehicle turned before the road block.

It is obvious to us from the evidence produced at the suppression hearing that the stop was not based at the time upon any traffic violations but rather upon the conclusion, however flawed, that avoidance of the roadblock gave rise to a reasonable suspicion of criminal activity. It is inconsequential that the officers could have stopped the vehicle for one or more traffic

violations where in fact the stop was for other reasons. Courts do not allow an officer to stop and investigate a "hunch" about criminal activity through the guise of a pretextual traffic violation. Sierra, 754 P.2d at 977. For the same reason, we will not allow the state to justify this stop on the retroactive basis that the officers might have stopped defendant's vehicle for traffic violations appellate counsel believes occurred prior to the stop.

## III. REASONABLE AND ARTICULABLE SUSPICION

### A. Generally

The state's principle argument to justify this stop is based upon Utah Code Ann. § 77-7-15 (1982), which provides:

A peace officer may stop any person in a public place when he has a *reasonable suspicion* to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

*Id.* (emphasis added). *See also, e.g., Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *State v. Menke,* 787 P.2d 537, 541 (Utah Ct.App. 1990). It is the state's position that avoiding the roadblock created a reasonable suspicion that the occupants of the vehicle were involved in criminal activity.

Numerous Utah cases have dealt with the question of what constitutes a reasonable suspicion. *See, e.g., State v. Mendoza,* 748 P.2d 181 (Utah 1987); *State v. Carpena,* 714 P.2d 674 (Utah 1986) (per curiam); *State v. Menke,* 787 P.2d 537 (Utah Ct.App. 1990); *State v. Sery,* 758 P.2d 935 (Utah Ct.App.1988); *State v. Sierra,* 754 P.2d 972 (Utah Ct.App.1988); *State v. Trujillo,* 739 P.2d 85 (Utah Ct.App.1987). No Utah case drawn to our attention, however, has dealt with a fact situation similar to the one in

tion, it constitutes circular reasoning to suggest that police may use the subsequent failure to stop as the justification for a search and seizure which would have been unlawful had the defendant complied with the order to stop. Though we in no way encourage citizens to be their own judges about whether or not they are obliged to

stop when ordered to do so by police, neither do we wish to encourage police to act on their hunches, signal a citizen to stop in the hope that the citizen will refuse, and use the failure to stop as a *post facto* justification for a stop which is otherwise without legal basis.

this case. Nevertheless, some general principles have developed which are applicable in every reasonable suspicion inquiry.

First, a reasonable suspicion must be based upon *objective facts* which indicate the existence of criminal activity. *Sierra,* 754 P.2d at 975. Second, "the officer must be able to *articulate* what it is about those facts which leads to an inference of criminal activity." *Menke,* 787 P.2d at 541 (emphasis in original). If the officer is unable to articulate what facts and inferences led to his suspicion, the suspicion is classified as a mere hunch and will not justify the subsequent stop. *Id.* Finally,

> the facts [must] be judged against an *objective standard:* would the facts available to the officer at the moment of the seizure or the search "warrant a [person] of reasonable caution in the belief" that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches.

*Trujillo,* 739 P.2d at 88 (emphasis added) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968)). With these general principles in mind, we analyze the facts of this case.

The state argues the following factors establish a "reasonable suspicion" supporting the stop of defendant's vehicle: 1) the lateness of the hour; 2) the lack of other traffic;[7] 3) the flashing lights at the roadblock; 4) the failure to turn around in a location safer than the middle of a narrow mountain road; and 5) the abruptness with which the vehicle reversed its course after the roadblock was apparently noticed.[8] Although the state has attempted to list several objective factors to justify the stop, its case boils down to a single argument—that the act of avoiding a roadblock, by itself, necessarily creates a reasonable suspicion of criminal activity.[9] The circuit court found that avoiding the roadblock by itself did not create a reasonable suspicion. We are not persuaded that the court's factual determinations underlying its decision were clearly erroneous. *See, e.g., State v. Mendoza,* 748 P.2d 181, 183 (Utah 1987).

Stated simply, this case is about avoiding contact with police officers. The state contends that when one obviously avoids confrontation with the police, that fact is sufficient to create a reasonable suspicion that criminal activity is afoot. Utah appellate courts appear not to have directly addressed this issue before.[10]

### B. Avoiding Police Confrontation

The majority of jurisdictions which have addressed the issue of flight have held that

---

**7.** The lateness of the hour and the conceded lack of traffic raise some question as to the real purpose for the roadblock in this case, which was claimed to be checking vehicle registrations and drivers' licenses. The testimony of Denny Orton, one of the posse members, seems to confirm such suspicions. He testified that Sheriff Judd "had some troubles with other types of problems throughout the county and [roadblocks were] a way to check into them." The particular problem on the Panguitch Lake Road was "a lot of parties and stuff going on and a lot of kids [using] that road to go to different places."

**8.** While the evidence supports that defendant perceived official vehicles positioned on the road some distance in front of him, it is far from clear that he recognized those vehicles to be employed in a roadblock as opposed to, for example, an accident investigation. In fact, Sheriff Judd testified that the scene as viewed by defendant would be consistent with some accidents.

**9.** It is clear from the record that avoiding the roadblock was the sole justification for the stop.

Sheriff Judd directed the posse members to *follow and stop* defendant's vehicle based solely upon the failure of the vehicle to stop at the roadblock. It is equally clear from the record that nothing of significance to the pursuing posse occurred after that time to elevate Sheriff Judd's initial hunch of criminality to anything more articulable.

**10.** Utah courts have dealt with the question of fleeing a crime scene as evidence of guilt. *See, e.g., State v. Bales,* 675 P.2d 573 (Utah 1983); *State v. Howland,* 761 P.2d 579 (Utah Ct.App. 1988). Even in that context, we have acknowledged that flight after the commission of a crime may be considered by the factfinder but that it is not itself sufficient to establish guilt. *Howland,* 761 P.2d at 580. Moreover, a jury instructed along these lines must also be advised "that (1) there may be reasons for flight fully consistent with innocence, and (2) even if consciousness of guilt is inferred from flight it does not necessarily reflect actual guilt of the crime charged." *Id.* at 580 n. 1.

the mere act of avoiding confrontation does not create an articulable suspicion. *See, e.g., Hinton v. United States,* 424 F.2d 876, 879 (D.C. Cir.1969) ("[F]light [is not] a reliable indicator of guilt without other circumstances to make its import less ambiguous."); *People v. Thomas,* 660 P.2d 1272, 1276 (Colo.1983) (en banc) ("[A]n effort to avoid police contact, by itself, is insufficient to support a stop."), *overruling People v. Waits,* 196 Colo. 35, 580 P.2d 391, 393 (1978) (en banc); *In re D.J.,* 532 A.2d 138, 141 (D.C.1987) (Defendant "merely attempted to walk away, behavior indicative simply of a desire not to talk to police. No adverse inference may be drawn from such a desire."); *McClain v. State,* 408 So.2d 721, 722 (Fla.Dist.Ct.App.1982) (Defendant's "behavior which, taken for its most insidious implications, indicated only that he wanted to avoid police, could not give rise to a reasonable suspicion that he was engaged in criminal activity."); *People v. Fox,* 97 Ill.App.3d 58, 52 Ill.Dec. 219, 223, 421 N.E.2d 1082, 1086 (1981) ("[T]he mere fact that the vehicle drove away at the approach of a squad car does not serve as a justifiable basis for conducting a *Terry* stop."); *State v. Hathaway,* 411 So.2d 1074, 1079 (La.1982) ("Even where flight ... reasonably appear[s] designed to avoid apprehension, reasonable cause will not arise unless flight" is coupled with other indicia of criminality.); *People v. Shabaz,* 424 Mich. 42, 378 N.W.2d 451, 460 (1985) (Flight "does not alone supply the particularized, reasoned, articulable basis to conclude that criminal activity [is] afoot."). *But see United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977) (flight "may furnish sufficient ground for a limited investigative stop").

We are persuaded by the majority position that flight alone is insufficient to create a reasonable suspicion. These decisions are in keeping with the United States Supreme Court's position that a person

need not answer any question put to him; indeed, he *may decline to listen to the questions at all and may go on his way.* He *may not be detained even momentarily* without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

*Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (citations omitted) (emphasis added). *See also Brown v. Texas,* 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (a Texas statute could not require someone to identify themselves in absence of reasonable suspicion). This court has also recognized that a person's "refusal to listen to the officer's questions or answer them, without more, does not furnish reasonable grounds for further detention." *State v. Trujillo,* 739 P.2d 85, 88 (Utah Ct.App. 1987).[11]

### C. Avoiding Roadblocks

The fact that the flight in this case occurred in advance of a roadblock does not dictate a decision contrary to that suggested by the analysis in the preceding section. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1395, 59 L.Ed.2d 660 (1979). Persons do not lose the protections of these amendments "when they step from the sidewalks into their automobiles." *Id.* at 663, 99 S.Ct. at 1401. Thus, if a person may choose to avoid or ignore an officer when approached on the street, we see no reason why he or she should not be able to avoid an equally if not more intrusive confrontation at a roadblock.

The state has cited us to a handful of cases from other jurisdictions holding that avoidance of a roadblock alone may justify

---

11. This general conclusion is reflective of the realization that citizens will avoid contact with police for reasons other than fear of being caught for a crime they have committed. A completely innocent person may wish to avoid the delay which a discussion with police may entail; others have a fear of police authority; still others resent and seek to avoid the "hassle" of a stop which lacks any basis.

a stop. *See Smith v. State*, 515 So.2d 149 (Ala.Crim.App.1987); *Coffman v. State*, 26 Ark.App. 45, 759 S.W.2d 573 (1988); *Snyder v. State*, 538 N.E.2d 961 (Ind.Ct.App. 1989).[12] Legal scholars, however, have suggested that a person may lawfully choose to avoid or to not cooperate at a roadblock. *See, e.g.*, Rogers, *The Drunk–Driving Roadblock: Random Seizure or Minimal Intrusion?*, 21 Crim.L.Bull. 197, 207 (May–June 1985); Weiner & McCulloch, *Sobriety Checkpoints in Michigan: Balancing Sobriety and Propriety Under the Fourth Amendment*, 4 Cooley L.Rev. 247, 268 n. 108 (1987). Moreover, a state's attorney in one case conceded on appeal that a stop based solely upon an evasive maneuver before a roadblock was unlawful. *Pooler v. Motor Vehicles Div.*, 306 Or. 47, 755 P.2d 701, 703 (1988) (en banc).

It is also noteworthy that several courts which have validated particular roadblocks have taken into consideration the existence of a policy allowing persons to avoid roadblocks if they wished to do so. *See, e.g.*, *State v. Superior Court*, 143 Ariz. 45, 691 P.2d 1073, 1075 (1984) (en banc) (officer would follow evader but not stop unless pursuant to other violation); *Ingersoll v. Palmer*, 43 Cal.3d 1321, 743 P.2d 1299, 1315, 241 Cal.Rptr. 42, 48–49 (1987) (sufficient advance warning given so that motorist could avoid roadblock); *Little v. State*, 300 Md. 485, 479 A.2d 903, 906 (1984) (no action would be taken if driver chose to avoid roadblock); *People v. Peil*, 122 Misc.2d 617, 471 N.Y.S.2d 532, 535 (Justice Ct.1984) (had defendant chosen, he could have avoided roadblock without recourse by police).

We decline to adopt the position that avoiding a roadblock creates an articulable suspicion for a stop. We see no distinction between the person who avoids confrontation at a roadblock and one who avoids confrontation with an officer under any other scenario. Although our decision may be at odds with a few roadblock cases, it is very much in keeping with the majority of cases addressing the more general issue of avoiding a confrontation with police.

## CONCLUSION

▮ We hold that avoiding a roadblock, even assuming its legality, without more, does not create an articulable suspicion that the occupants have engaged in or are about to engage in criminal activity.[13] The act merely demonstrates a desire to avoid police confrontation, *see* note 11, *supra*, and at best only gives rise to a hunch that criminal activity may be afoot. The Fourth and Fourteenth Amendments protect a person from unwarranted police intrusion without, at a minimum, an articulable suspicion of criminal activity. The circuit court's decision to suppress the evidence in this case was in furtherance of those important protections and is entitled to affirmance.

BILLINGS and GREENWOOD, JJ., concur.

---

**12.** The state also relies on *City of Las Cruces v. Betancourt*, 105 N.M. 655, 735 P.2d 1161, 1163 (Ct.App.1987), and *Jones v. State*, 723 P.2d 984, 985 (Okla.Crim.App.1986). These cases are entirely unpersuasive. *Betancourt* involved a vehicle which charged wildly through a roadblock. In *Jones*, the vehicle's driver committed a misdemeanor while in the course of avoiding a roadblock.

**13.** By this holding, we do not mean to suggest that flight must be entirely ignored. *See, e.g.*, *State v. Mendoza*, 748 P.2d 181, 184 (Utah 1987)

(in articulable suspicion analysis, Court noted that defendants did not attempt to evade officers). Flight may heighten an officer's general suspicion and provide additional justification for a stop. We merely hold that "flight," *alone*, is not sufficient to create an articulable suspicion for a stop. *See Hinton v. United States*, 424 F.2d 876, 879 (D.C.Cir.1969); *In re D.J.*, 532 A.2d 138, 141 (D.C.1987); *State v. Hathaway*, 411 So.2d 1074, 1079 (La.1982); *People v. Shabaz*, 424 Mich. 42, 378 N.W.2d 451, 460 (1985).