**Beverly HOWARD, Appellant,**

**v.**

**Robert J. VOSHELL, Director, State of Delaware Department of Public Safety, Division of Motor Vehicles, Appellee.**

Superior Court of Delaware,
Kent County.

Submitted: Feb. 11, 1992.
Decided: June 19, 1992.

H. Cubbage Brown, Jr., and Lloyd A. Schmid, Brown, Shiels & Chasanov, Dover, for appellant.

Frederick H. Schranck, Deputy Atty. Gen., for the State.

## OPINION

RIDGELY, President Judge

Appellant Beverly Howard ("Howard") appeals a decision by the Department of Public Safety, Division of Motor Vehicles ("DMV") which revoked her driver's license for three months pursuant to 21 *Del.C.* § 2742(c). At issue in this appeal is whether there was an articulable and reasonable suspicion to stop Howard's vehicle simply because she made a lawful U-turn 1,000 feet before a sobriety checkpoint. Because there was no reasonable, articulable suspicion on the facts of this case to stop Howard's vehicle, the Court finds that the stop was unlawful, and that the DMV's ultimate determination of probable cause was erroneous. Accordingly, I reverse the decision below.

## I. FACTS

On the night of Howard's arrest, Delaware State Police conducted a sobriety checkpoint on U.S. 113A. Howard noticed the lights, flares, and marked cars from about 1,000 feet away, when she stopped briefly and then made a lawful U-turn and proceeded in the opposite direction. A State Police trooper observed Howard making her U-turn and then followed her for a short distance before finally stopping her. It is undisputed that the trooper stopped Howard only because she made a U-turn before reaching the sobriety-checkpoint roadblock. Howard gave no reason to the trooper about why she turned. Later, Howard told another trooper she had turned around to avoid what she believed looked like an accident down the road.

After stopping Howard, the trooper smelled an odor of alcoholic beverage on her breath, and he decided to give her a field-sobriety test. At the DMV hearing, he gave the following percentage grades to evaluate Howard's performance on the six-component field test given at the scene of the incident: 60 percent on the balance test, 60 percent on the walking test, 60 percent on the turn test, 50 percent on the finger-to-nose test, 100 percent on the alphabet test, and 100 percent on the counting test. Next, after bringing Howard to the station and observing her in a holding area for approximately 20 minutes, he administered a breath test which resulted in a reading of .10. Howard was then arrested for driving under the influence of alcohol.

The parties substantially agree to these facts but dispute Howard's reasons for driving away from the checkpoint. The decision below turned in part on her reason for doing so. The hearing officer apparently considered the reasons for the U-turn relevant to a determination of whether the trooper had probable cause to arrest Howard. Howard argues she did not realize the lights and flares indicated a sobriety checkpoint and that she turned around to avoid the delay from what she perceived was an accident. The State essentially contends Howard's failure to respond to the trooper's question as to why she turned around amounted to an admission that she acted to avoid a sobriety checkpoint. Nonetheless, this purported admission was given *after* the stopping of her vehicle.

The State argues that Howard has waived any objection to the stop by not presenting it below. Alternatively, the State argues the initial stop was valid. It further contends that, based upon Howard's performance on the field-sobriety tests and the intoxilyzer reading, the decision should be affirmed. Howard focuses on the legality of the initial stop itself and argues the trooper lacked the requisite "reasonable suspicion" that she had committed a crime or traffic violation. She declares her performance on the field-sobriety tests and intoxilyzer irrelevant because they followed an illegal stop and detention.

## II. STANDARD OF REVIEW

■ This Court has the limited authority to correct any errors of law and to determine whether the record below contains substantial evidence to support the DMV's factual findings and legal conclusions. *Olney v. Cooch*, Del.Supr., 425 A.2d 610, 613 (1981); *Barnett v. Division of Motor Vehicles*, Del.Super., 514 A.2d 1145, 1146 (1986). The substantial evidence standard demands more than a scintilla but less than a preponderance of the evidence. Substantial evidence requires such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Quaker Hill Place v. State Human Relations*, Del.Super., 498 A.2d 175 (1985). If the "findings are not supported by substantial evidence of record, or are not the product of an orderly and logical deductive process, then the decision under review cannot stand." *Id.* at 179. This Court must look into the entire record to evaluate whether the hearing officer could fairly and reasonably reach its conclusion. *Warmouth v. State Board of Examiners, Optometry*, Del.Super., 514 A.2d 1119, 1121 (1985).

### A. *The Waiver Issue*

■ The State argues that Howard has waived her right to contest the legality of the stop. A motorist can waive objections to the legality of the stop by failing to raise them. In general, this Court will decline to review any issue not raised and fairly presented below. However, matters of public policy are exceptions to the general rule, *Webster v. State*, Del.Supr., 213 A.2d 298 (1965). Even if waiver is assumed, the issue of first impression in this case raises a matter of public policy because of its importance to the proper administration of Delaware's license revocation laws consistent with the Fourth Amendment. Accordingly, the Court will consider the question raised.

### B. *The Legality of the Stop*

■ The parties do not contest "that stopping a vehicle and detaining its occupants is a Fourth Amendment seizure regardless of the reason for the stop or the brevity of the detention." *See State of Utah v. Talbot*, 792 P.2d 489, 491 (Utah App.1990) (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *aff'g* Del.Supr., 382 A.2d 1359 (1978). While Delaware does not require that an officer have probable cause to stop and detain a motorist, the officer must still have at least a "reasonable and articulable suspicion." *See Downs v. State of Delaware*, Del.Supr., 570 A.2d 1142, 1145 (1990) (citing *Delaware v. Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401) ("police have the authority to forcibly detain a person if they have a reasonable suspicion that a vehicle or its occupants are subject to seizure for violation of law"). Proof of reasonable suspicion requires less evidence than that of probable cause. Courts commonly equate "reasonable suspicion" with "an officer's ability to 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'" *Coleman v. State*, Del.Supr., 562 A.2d 1171, 1174 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)), quoted in *Downs v. State of Delaware*, 570 A.2d at 1145.

■ Delaware has considered the constitutionality of DUI roadblocks and has found no *per se* Fourth Amendment violation. *State of Delaware v. Stroman*, Del.Super., IN83-02-0055T, N83-04-0132T, N83-09-0620T, Stiftel, P.J. (May 18, 1984). The stopping of a vehicle within the purview of a sobriety checkpoint remains a legitimate tool for the enforcement of laws prohibiting driving while under the influence. However, this Court has also noted that, "[e]xcept for roadblock or sobriety-checkpoint type stops that do not involve the unconstrained exercise of discretion by peace officers, the Fourth Amendment requires that a police officer have at least an articulable and reasonable suspicion that the operation of a vehicle is unlicensed, that the vehicle is unregistered, or that the vehicle or an occupant is otherwise subject to seizure for a violation of law before a vehicle is stopped on a public roadway." *Marousek v. Voshell*, Del.Super., C.A. No.

90A–JN–10, Ridgely, P.J., 1990 WL 251362 (Dec. 17, 1990); *See also Delaware v. Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673–74 (Constitution violated if stop involves unconstrained exercise of discretion); *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (Court considered checkpoint designed to prevent entry of illegal aliens acceptable only to extent not subject to police officers' unfettered discretion).

■ To determine whether the officer had a reasonable and articulable suspicion, the Court must focus on the trooper's knowledge before the stop. Information derived from the stop cannot enter into the evaluation of whether the trooper had a reasonable basis to stop Howard. The Court finds the record sufficiently developed to make this determination.

■ Both parties correctly note Delaware has yet to directly confront the issue of whether a lawful U-turn, without more, that avoids a sobriety checkpoint roadblock, suffices to give a police officer "reasonable and articulable suspicion" to stop the vehicle. As to the general issue of avoiding police confrontation, "[t]he majority of jurisdictions which have addressed the issue of flight have held that the mere act of avoiding confrontation does not create an articulable suspicion." *See State v. Talbot,* 792 P.2d 489, 494 (Utah App.1990) (collecting and citing cases). Courts guided by such holdings have further held that a legal U-turn alone does not give rise to reasonable suspicion. *State of Utah v. Talbot,* 792 P.2d 489 (Utah App.1990); *Pooler v. Motor Vehicle Division,* 88 Or. App. 475, 746 P.2d 716 (1987), *aff'd* 306 Or. 47, 755 P.2d 701 (1988). *But see Snyder v. State,* 538 N.E.2d 961, 965 (Ind.Ct.App. 1989) (U-turn might give rise to a reasonable suspicion); *Stroud v. Commonwealth of Virginia,* 6 Va.App. 633, 370 S.E.2d 721 (1988) (police officer had reasonable and articulable suspicion to stop motorist who made a U-turn within 100–150 feet of the roadblock). The Court in *Talbot, supra,* held as follows:

... avoiding a roadblock, even assuming its legality, without more, does not create an articulable suspicion that the occupants have engaged in ... criminal activity. The act merely demonstrates a desire to avoid police confrontation, and at best only gives rise to a hunch that criminal activity may be afoot. The Fourth and Fourteenth Amendments protect a person from unwarranted police intrusion without, at a minimum, an articulable suspicion of criminal activity.

*State of Utah v. Talbot,* 792 P.2d at 495.

On the facts of this case, the Court holds that there was no reasonable and articulable suspicion which justified the seizure of Howard and her vehicle. The Court notes its decision here does not mean a U-turn before a roadblock adds nothing to the reasonableness of an officer's suspicion, but rather, a legal U-turn made 1000 feet before a roadblock is beyond the purview of the roadblock. *See Murphy v. Commonwealth,* 9 Va.App. 139, 384 S.E.2d 125, 128 (1989) ("act of driver in making a lawful right turn 350 feet before a roadblock does not give rise to a reasonable suspicion ... unless coupled with other articulable facts"). Each case must be decided on its own facts. *See Murphy v. Commonwealth of Virginia, supra* ("factors as subtle as the difference between a U-turn 150 feet from a roadblock and a lawful turn into an existing roadway 350 feet from a roadblock may affect the determination"). The Court also considers the lack of an identifiable way for a police officer to determine whether motorists 1,000 feet away from the checkpoint truly had notice of what lay ahead to be significant. *See State v. Hester,* A.D., 245 N.J.Super. 75, 584 A.2d 256, 259 (1990) (refusing "to conclude that it was reasonable police procedure to lead a motorist to believe that a lawful turn was a viable alternative to stopping at the checkpoint and then, in the absence of some other independent basis for stopping the vehicle or a reasonable suspicion that it was attempting to evade the roadblock, engage a police vehicle in pursuit of that motorist").

## C. *The Legal Effect Upon a License Revocation Proceeding of a Stop In Violation Of the Fourth Amendment*

Delaware's license revocation statute requires as a predicate to revocation of a license that there be "probable cause to believe that the person was in violation of § 4177." 21 *Del.C.* § 2742. Because a stop consistent with the Fourth Amendment is necessarily subsumed within the intent of this statute, as a matter of law, the revocation of Howard's license pursuant to a stop made in violation of the Fourth Amendment was beyond the intent of the General Assembly and therefore not authorized by section 2742.

## IV. CONCLUSION

Because the record reveals that the DMV committed legal error in its decision to revoke Howard's license, the decision below is REVERSED.