48 P.3d 584

STATE of Hawai'i, Plaintiff–Appellee,

v.

Robert T. BARROS, Defendant–Appellant.

No. 23755.

Supreme Court of Hawai'i.

June 20, 2002.

338

Cindy A.L. Goodness, Deputy Public Defender, on the briefs, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ.; with ACOBA, J., concurring separately and dissenting.

Opinion of the Court by RAMIL, J.

## I. INTRODUCTION

Defendant-appellant Robert Barros appeals from a circuit court judgment of conviction for promoting a dangerous drug in the third degree, Hawai'i Revised Statutes (HRS) § 712–1243 (1993), and unlawful possession of drug paraphernalia, HRS § 329–43.5(a) (1993 and Supp.2000). Judgment was entered August 23, 2000; Barros was sentenced to probation for five years. Notice of appeal was timely filed on September 22, 2000, within the thirty-day period for appeal prescribed by the Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b)(1). On appeal, Barros argues that the circuit court, Judge Wilfred K. Watanabe, erred in denying Barros's motion to suppress the evidence because the items were obtained through a warrantless pat-down search and seizure incident to an unlawful arrest in violation of HRS § 291C–164 (1993).

For the reasons discussed herein, we hold that an officer is not prohibited from requesting a warrant check in a traffic violation stop when the check does not prolong the length of time needed to issue the citation. Accordingly, we affirm the circuit court's judgment of conviction.

## II. BACKGROUND

On September 29, 1999, at approximately 2:50 p.m., Officer Rafael Hood (Officer Hood), while on patrol in the Kalihi–Palama–Chinatown–A'ala Street area, observed Barros jaywalk from the mauka side of North

King Street to Aʻala Park, then from Aʻala Park back to North King Street. At 2:56 p.m., Officer Hood approached Barros, intending to issue Barros a citation for jaywalking. Officer Hood forgot his citation book in his patrol car, and decided not to retrieve it. Officer Hood identified himself to Barros, explained the reason for the stop, and informed Barros that he was going to cite Barros for jaywalking. In response to Officer Hood's request for identification, Barros presented his State of Hawaiʻi Identification Card.

Officer Hood used his shoulder-mounted police radio to request a warrant check. He requested a warrant check because "this was a high drug activity area." Officer Hood also stated that Barros was "acting funny" because "he started shifting from one foot to the other ... trying to circle me." Officer Hood interpreted his conduct as leading to a possible attack or that Barros "just didn't wanna be there." In addition, Officer Hood generally requests warrant checks to determine "if the person has any unfinished business with the court."

At that time, Officer Hood began to write down the salient information to issue a citation. Because he did not have his citation book with him, Officer Hood recorded the necessary information in his notebook. Within a couple of minutes, dispatch confirmed that Barros had outstanding warrants. Officer Hood placed Barros under arrest for contempt of court. Barros was not aware of the outstanding traffic warrant.

Thereafter, Officer Hood conducted a pat-down search of Barros's person for "contraband, means of escape, [and] fruits of the crime." Officer Hood recovered from Barros's pockets a metallic stick, flattened at one end and burned at the other end. Based on his training and experience, Officer Hood believed the stick to be a "scraper" used to extract rock cocaine from inside of pipes. Officer Hood recovered from Barros's left front pocket a hard cylindrical object believed to be a "crack pipe." As Officer Hood was removing the pipe from Barros's left front pocket, an unraveled napkin also came out revealing a piece of rock cocaine inside.

As a result of the arrest for Contempt of Court and seizure of the items, Officer Hood did not issue a jaywalking citation to Barros. Had Officer Hood not forgotten his citation book, it would have taken approximately five minutes to issue the citation.

## III. STANDARD OF REVIEW

■ The circuit court's ruling on a motion to suppress is reviewed *de novo* to determine whether, as a matter of law, the ruling was "right" or "wrong." *State v. Kauhi*, 86 Hawaiʻi 195, 197, 948 P.2d 1036, 1038 (1997). Statutes are reviewed *de novo* under the "right/wrong" standard. *Shimabuku v. Montgomery Elevator Co.*, 79 Hawaiʻi 352, 357, 903 P.2d 48, 52 (1995).

■ Conclusions of law are not binding upon an appellate court and, therefore, are reviewed *de novo* under the "right/wrong" standard. *State v. Tuipuapua*, 83 Hawaiʻi 141, 145, 925 P.2d 311, 315 (1996); *State v. Bowe*, 77 Hawaiʻi 51, 53, 881 P.2d 538, 541 (1994). Moreover, a conclusion of law will not be overturned if supported by the trial court's findings of fact and the application of the correct rule of law. *Id.*

■ Findings of fact, upon which a motion court's ruling rests, are reviewed under the clearly erroneous standard. *State v. Okumura*, 78 Hawaiʻi 383, 392, 894 P.2d 80, 89 (1995). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks omitted).

## IV. DISCUSSION

### A

Barros argues that the pat-down search was conducted incident to an unlawful citation arrest. He argues that HRS § 291C–164 confines the arrest procedures in non-criminal traffic violations of HRS chapter 291C to the issuance of a citation, and does not authorize a warrant check. Under both

statutory and constitutional analyses, Barros's claim fails.

### 1. *Statutory analysis*

When construing a statute, the starting point is the language of the statute itself. *Richardson v. City & County of Honolulu,* 76 Hawai'i 46, 63, 868 P.2d 1193, 1210, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994). The court's "foremost obligation is to ascertain and give effect to the intention of the legislature," *Crosby v. State Dept. of Budget and Finance,* 76 Hawai'i 332, 340, 876 P.2d 1300, 1308 (1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995) (internal quotation marks and citations omitted), which we discern primarily from the language of the statute itself, although we may consider other sources. *Shimabukku,* 79 Hawai'i at 357, 903 P.2d at 52. "[W]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Mathewson v. Aloha Airlines, Inc.,* 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (citation and internal quotation marks omitted).

Barros argues that the distinction drawn by the court in *State v. Vallesteros,* 84 Hawai'i 295, 933 P.2d 632 (1997), between traffic-related criminal offenses and traffic violations must be applied in this case to preclude a warrant check in a traffic violation stop. The *Vallesteros* court considered the circumstances under which a police officer may order a driver out of a vehicle for a traffic offense. The court applied the rules of statutory construction to HRS §§ 286–10, 803–5, and 803–6. The court found that those statutes overlapped in their governance of arrest procedures for traffic offenses. Pursuant to HRS §§ 803–5(a) and (b) (1993), and HRS § 803–6(b) (1993), police have the authority to arrest a person without a warrant if the officer has probable cause to believe the individual has committed an "offense," and has discretion to issue a citation in lieu of arrest for misdemeanors, petty misdemeanors, and violations. At the same time, however, the plain language of HRS § 286–10 (1993), supported by legislative history, requires that law enforcement personnel issue a citation in lieu of arrest in those instances where they are not required to take the alleged violator before a judge. Reading the statutes in *pari materia,* the *Vallesteros* court found that law enforcement personnel may arrest individuals for traffic-related criminal offenses, but may not arrest individuals for mere traffic violations. Accordingly, the court held that police officers may order individuals out of vehicles for traffic-related criminal offenses, but may not order individuals out for traffic violations.

In this case, the issue is whether a police officer may request a warrant check in a traffic violation stop. By contrast, in *Vallesteros,* the issue was whether an officer may order an individual out of the vehicle. The *Vallesteros* court prohibited the exit order because the officer was statutorily prohibited from making a physical arrest and an exit order is a prefatory step towards making a physical arrest. The conducting of a warrant check, as in this case, is unrelated to taking a person into physical custody and therefore is not a prefatory step towards making a physical arrest. Accordingly, the *Vallesteros* distinction between traffic-related criminal offenses and traffic violations cannot automatically be applied in this case, and this court must analyze the pertinent statutes to see if a similar distinction should be applied to warrant checks.

Barros urges this court to interpret HRS § 291C–164 (1993) as prohibiting officers from requesting warrant checks in traffic violation stops. HRS § 291C–164 provides:

> Except when authorized or directed under state law to immediately take a person arrested for a violation of any of the traffic laws before a district judge, any authorized police officer, upon making an arrest for violation of the state traffic laws shall take the name, address, and *driver's license number* of the alleged violator and the *registered license number* of the *motor vehicle involved* and shall issue to the *driver* in writing a summons or citation, hereinafter described, notifying the *driver* to answer to the complaint to be entered against the *driver* at a place and at a time provided in the summons or citation.

(Emphasis added.) HRS § 291C–164 pertains to the issuance of citations to drivers,

and not to pedestrians. Therefore, it is inapplicable to Barros in the present case. However, HRS § 291C–165 is applicable to the present case and provides:

Summons or citation. (a) There shall be provided for use by authorized police officers, a form of summons or citation for use in citing violators of those traffic laws which do not mandate the physical arrest of such violators. The form and content of such summons or citation shall be adopted or prescribed by the administrative judge of the district court and shall be printed on a form commensurate with the form of other summonses or citations used in modern methods of arrest, so designed to include all necessary information to make the same valid within the laws and regulations of the State.

(b) In every case when a citation is issued, the original of the citation shall be given to the violator; provided that:

(1) In the case of an unattended vehicle, the original of the citation shall be affixed to the vehicle as provided for in section 291C–167; or

(2) In the case of:

(A) A vehicle utilizing the high occupancy vehicle lane illegally; or

(B) A traffic or other violation on a controlled access facility that is recorded through the use of a hand-held or mounted video camera, conventional camera, or digital camera that produces photographic identification of a vehicle, the original of the citation may be sent within three days of the date of the incident by certified mail, registered mail, or first class mail with a certificate of mailing obtained as evidence of service to the registered owner of the vehicle at the address on record at the vehicle licensing division; provided that days when the post office is not open to the public shall not be included in the calculation of the three days; provided further that the administrative judge of the district courts may allow a copy of the citation to be given to the violator or affixed to the vehicle and provide for the disposition of the original copy and any other copies of the citation.

(c) Every citation shall be consecutively numbered and each carbon copy shall bear the number of its respective original.

There is nothing in the language of the statute or the statute's legislative history to indicate that the statute was intended to preclude or limit the officer from performing any of his other duties or carrying out the other standard procedures of his employment. Accordingly, the warrant check was not impermissible pursuant to HRS § 291C–165.

Finally, Defendant cites *State v. Rife*, 133 Wash.2d 140, 943 P.2d 266 (1997), in support of his contention that a warrant check was impermissible. In *Rife*, the Washington Supreme Court interpreted Washington's statute to find that the police lacked statutory authority to run a warrant check after stopping the pedestrian for jaywalking. *Id.* at 271. *Rife*, however, is distinguishable from this case. In *Rife*, the police detained the defendant for five to ten minutes while the initial check was made and another five to ten minutes while verification was made. In the instant case, Barros was not detained for any longer than it took to issue the citation, *see* discussion *infra*. Moreover, the Washington Supreme Court acknowledged in a case subsequent to *Rife*,

When we interpreted RCW 46.61.021 in *State v. Rife*, 133 Wash.2d 140, 943 P.2d 266 (1997), to forbid warrant checks in traffic stops, the Legislature acted with uncharacteristic dispatch in a special legislative session to amend the statute to permit what we had deemed forbidden. LAWS OF 1997, Sp. Sess., ch. 1, § 1. The amended statute became effective only three weeks after we issued *Rife*. Demonstrably, statutes can be ephemeral and are therefore not particularly helpful to [Defendant's] position. Immutable constitutional principles provide more sturdy support.

*State v. Mendez*, 137 Wash.2d 208, 970 P.2d 722, 727 (1999).

Accordingly, statutory interpretation does not compel the distinction drawn by the *Vallesteros* court between traffic-related criminal offenses and traffic violations. Thus, there is no statutory impediment to a police officer requesting a warrant check in the course of traffic violation stops.

### 2. Constitutional analysis

■ Article I, section 7 of the Hawai'i Constitution provides in relevant part that "[t]he right of the people to be secure in their person, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated[.]" Additionally,

> [t]he right to be free of 'unreasonable' searches and seizures under article I, section [7] of the Hawai'i Constitution is enforceable by a rule of reason which requires that governmental intrusions be no greater in intensity than absolutely necessary under the circumstances.

*State v. Kaluna*, 55 Haw. 361, 369, 520 P.2d 51, 58–59 (1974).

This case presents the question deferred in *State v. Silva*, 91 Hawai'i 111, 979 P.2d 1137 (App.1999) [hereinafter *Silva I*]. In *Silva I*, the police officers were originally dispatched for the purpose of investigating a possible trespass and theft. Thus, the *Silva I* majority concluded that "HRS § 291C–164 is not applicable to the present situation, and we need not decide whether the statute prohibits a police officer from conducting a warrant check on a defendant stopped for a noncriminal traffic-related infraction." *Silva I*, 91 Hawai'i at 119–20, 979 P.2d at 1145–46. Because Barros was stopped for a non-criminal traffic-related infraction, this court may now decide the question deferred in *Silva I*.

■ In *State v. Silva*, 91 Hawai'i 80, 979 P.2d 1106 (1999) [hereinafter *Silva II* ], *aff'g Silva I*, we noted that we "d[id] not read [*Silva I* ] as generally allowing the police to prolong the detention of individuals subjected to brief, temporary investigative stops ... solely for the purpose of performing a check for outstanding warrants." *Silva II*, 91 Hawai'i at 81, 979 P.2d at 1107. We now hold that the police may not do so.[1]

■ In this case, Officer Hood was justified in stopping Barros because Officer Hood had observed Barros jaywalking—conduct that is prohibited under HRS § 291C–73 (1993).[2] As Barros committed the offense in Officer Hood's presence, there appears to be no doubt that Officer Hood could lawfully stop Barros to cite him for the offense.[3] In

---

**1.** Several other jurisdictions that have considered a similar issue regarding the constitutionality of warrant checks conducted during the course of traffic stops have held that such action does not constitute an unreasonable seizure so long as the check does not significantly extend the period of detention otherwise justified by the initial stop. *See, e.g., State v. Ybarra*, 156 Ariz. 275, 751 P.2d 591, 592 (1987); *Storm v. State*, 736 P.2d 1000, 1001–02 (Okla.Crim.App.1987); *State v. Nelson*, 76 Or.App. 67, 708 P.2d 1153, 1155 (1985); *State v. Smith*, 73 Or.App. 287, 698 P.2d 973, 976 (1985); *Petty v. State*, 696 S.W.2d 635, 638–39 (Tex.App.1985). In addition, "even in temporary investigative stop situations, which may be justified on a lesser 'reasonable suspicion' rather than 'probable cause' standard, the United States Supreme Court has seemingly approved of the use of warrant checks to determine whether the individual being temporarily detained is 'wanted.' " *See Silva I*, 91 Hawai'i at 118, 979 P.2d at 1144 (citing *Michigan v. Summers*, 452 U.S. 692, 701, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (quoting a passage from Professor LaFave's treatise on the fourth amendment that states in part: "[In the course of a *Terry*-type stop, s]ometimes the officer will communicate with others, either police or private

citizens, in an effort to verify the explanation tendered or to confirm the identification or determine whether the person of that identity is otherwise wanted.... There is no reason to conclude that any investigative methods of the type just listed are inherently objectionable; they might cast doubt upon the reasonableness of the detention, however, if their use makes the period of detention unduly long or involves moving the suspect to another locale.")); *see also id.* (citing courts in other jurisdictions that have upheld the validity of brief warrant checks during the valid investigatory stops). Thus, the observation of *Silva II* is commensurate with that of other jurisdictions.

**2.** HRS § 291C–73 provides in relevant part that "[n]o pedestrian shall cross a roadway intersection diagonally unless authorized by official traffic-control devices; and, when authorized to cross diagonally, pedestrians shall cross only in accordance with the official traffic-control devices pertaining to such crossing movements."

**3.** HRS § 803–5(a) (1993) provides in relevant part that "[a] police officer or other officer of justice, may, without warrant, arrest and detain

order to pass constitutional muster, the length of time Officer Hood could permissibly detain Barros must have been "no greater in intensity than absolutely necessary under the circumstances." *Kaluna*, 55 Haw. at 369, 520 P.2d at 58–59. The warrant check was completed entirely within the time required for Officer Hood to issue the citation. The evidence in the record also demonstrates that Officer Hood neither used the stop as a pretext to allow him to request the warrant check, nor did he prolong impermissibly the stop in order to allow dispatch to complete the warrant check he requested.[4] Moreover, there is no indication that Officer Hood requested any information other than what was necessary to facilitate the warrant check. Thus, Officer Hood's detention of Barros to run the warrant check did not constitute an unreasonable intrusion.

**B**

Barros makes two additional claims: (1) that the circuit court erred in denying Barros's motion to suppress evidence because Officer Hood lacked reasonable suspicion to otherwise justify the warrantless pat-down search and seizure; and (2) that even if Officer Hood did not violate Barros's constitutional rights, the circuit court erred in denying Barros's motion to suppress evidence because the exclusionary rule should apply to deter future violations of HRS § 291C–164, and to maintain judicial integrity.

▇▇▇▇ As to Barros's first argument, the pat-down search was justified under the "search incident to a lawful arrest" exception to the warrant requirement. *See State v. Reed*, 70 Haw. 107, 115, 762 P.2d 803, 808 (1988) (holding that "it is per se reasonable for the arresting police officers to conduct a warrantless, limited pat-down search of an arrestee's person and the area under the arrestee's immediate control for weapons, escape instrumentalities, or contraband."); *State v. Naeole*, 80 Hawai'i 419, 423, 910 P.2d 732, 736 (1996) ("We have long held that a search incident to a lawful arrest is an 'exception to the usual requirement that the officer have a warrant prior to conducting the search.' ") (citing *State v. Enos*, 68 Haw. 509, 510, 720 P.2d 1012, 1014 (1986)). Next, because HRS § 291C–164 is inapplicable to the present case, and HRS § 291C–165 does not prohibit Officer Hood from performing a

for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise."

4. "[A]n attack on a conclusion which is supported by a finding is not an attack on that finding. If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid." *Wisdom v. Pflueger*, 4 Haw.App. 455, 459, 667 P.2d 844, 848 (1983). On March 6, 2000, the first circuit court issued its Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence. The court's March 6, 2000 Order, which was not challenged on · appeal, includes findings that "Hood approached Defendant *in order to* issue him a citation for jaywalking," and that "Hood identified himself, explained to Defendant the reason he was stopped, and asked for Defendant's identification *in order to* issue him a citation for jaywalking." On June 8, 2000, the first circuit court issued its Findings of Fact, Conclusions of Law and Order Finding Defendant Guilty as Charged After Jury Waived Trial. The court's June 8, 2000 Order, which was not challenged on appeal, reiterated that "Hood asked Defendant for identification *in order to* issue him a citation for jaywalking."

In addition, "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *See State v. Jenkins*, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000) (citation omitted). Thus, on appeal, we will not disturb the circuit court's finding that "[Officer] Hood's testimony was credible and the court accepts as true and accurate his endition of the details of the incident." Officer Hood testified that he came into contact with Barros because he "wanted to stop [Barros] to cite him for jai—jaywalking," that he approached Barros because he "intended to cite him for ... jaywalking," that he "stopped [Barros] because that was the third time that [Barros] had jaywalked apparently in full view of [Officer Hood], and a uniformed patrol officer in a marked patrol car," and that if he had completed writing down the information for the jaywalking citation before the warrant was confirmed, he "would have [given Barros] the citation and just let him go." Officer Hood's testimony also revealed that he did not "ha[ve] it in [his] mind that [Barros] was looking for drugs," that he did not "ha[ve] a gut feeling maybe that [Barros] had drugs on him," and that he did not "just want[ ] to shake [Barros] down to see if he had any drugs."

warrant check, this court need not consider Barros's second argument.

## V. CONCLUSION

After conducting both statutory and constitutional analyses, we extend the holding in *Silva I*, as clarified by *Silva II*, to apply to "non-criminal traffic-related infractions" (*i.e.*, traffic violations). The act of calling in a warrant check during a traffic violation stop is not statutorily prohibited and does not amount to an unconstitutional search or seizure. Thus, an officer is not prohibited from requesting a warrant check incident to the issuance of a citation for a traffic violation when the check does not prolong the length of time needed to issue a citation.

In light of the foregoing, we affirm the circuit court's judgment of conviction.

Opinion of ACOBA, J., concurring in part and dissenting in part.

The express authority included in Hawai'i Revised Statutes (HRS) § 803–6 (1993) to conduct a warrant check when the infraction is a violation, rests on the statute's facial premise that a police officer has discretion to either arrest or to cite a person who commits a violation and may, accordingly, conduct the check in aid of that decision. Because, in my view, a "jaywalking" violation is not an arrestable infraction either under our statutes or our state constitution, and, thus, the justification for a warrant check detention—to enable the officer to choose between making an arrest or issuing a citation—is lacking in a jaywalking situation, I believe that, under HRS § 803–6, the officer may only cite the violator. Consequently, the police may not detain a person for the purpose of conducting a warrant check in a stop for jaywalking.

Thus, a prolongation of the jaywalking stop for the purpose of conducting a warrant check would render the detention invalid, notwithstanding some suggestion to the contrary. *See* majority opinion at 342 n. 1, 48 P.3d at 589 n. 1. While the sufficiency of the evidence as to whether a detention beyond that necessary to cite Defendant–Appellant Robert Barros (Defendant) for jaywalking here is arguable, Defendant did not challenge the court's finding that the citation procedure was conducted simultaneously with the warrant check and, hence, presumably the jaywalking stop was not extended—and Defendant not detained—beyond the jaywalking citation process. On that basis, I concur with the result.

## I.

HRS chapter 291C is the Statewide Traffic Code. Under the chapter, "traffic" is defined as referring in part to "pedestrian," HRS § 291C–1 (1993 & Supp.2001), which, in turn, is denoted, *inter alia*, as "any person afoot." *Id.* Defendant was charged with jaywalking, an offense under the traffic code, HRS § 291C–73(c) (1993).[1] The maximum penalty for jaywalking is a fine.[2] No jail sentence is prescribed. *See* HRS §§ 291C–161 (Supp.1999) & 291C–73. HRS chapter 291C does not provide that a "physical arrest" is mandated for jaywalking. In that connection, HRS § 291C–165 (1993 & Supp. 2000) provides for the use of citations in cases of traffic violations for which an arrest is not statutorily mandated:

(a) There shall be provided for use by authorized police officers, *a form of summons or citation for use in citing violators of those traffic laws which do not mandate the physical arrest of such violators*. ...

---

1. HRS § 291C–73(c) states that "[b]etween adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked crosswalk."

2. Because jaywalking is punishable only by a fine, it is a violation under our penal code. *See* HRS § 701–107(5) (1993) ("An offense ... constitutes a violation ... in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction[.]"); *Cf. State v. Chow*, 77 Ha-

wai'i 241, 249, 883 P.2d 663, 671 (App.1994) (relying on HRS § 701–107(5) to establish that an "illegal turn is a traffic offense and is a violation which is not a crime"). A violation constitutes a *civil infraction*, not a criminal offense. *Cf. State v. West*, 95 Hawai'i 61, 63, 18 P.3d 923, 925 (App.2000) (holding that a speeding violation under the same chapter "is a civil traffic infraction and not a criminal offense" (citations omitted)). Thus, it is understandable that an arrest is not prescribed for jaywalking.

(b) In every case when a citation is issued, the original of the citation shall be given to the violator[.]

(Emphasis added).

Relatedly, chapter 291D concerns the "adjudication of traffic infraction[s]." The purpose of this chapter is the "decriminalization of certain traffic offenses" which "[d]ispense[s] in most cases with the need for witnesses, including law enforcement officers, to be present and for the participation of the prosecuting attorney[.]" HRS 291D-1(4) (1993). HRS § 291D-2 (1993) generally defines a "[t]raffic infraction" as "all violations of statutes, ordinances, or rules relating to traffic movement and control, *including . . . pedestrian offenses,* for which the prescribed penalties do not include imprisonment." (Emphasis added.) Chapter 291D does not provide that an arrest is statutorily mandated for jaywalking.

## II.

HRS § 803-6 is ostensibly germane because it authorizes a police officer to conduct an outstanding warrant inquiry in circumstances where the officer may write a citation for an offense in lieu of making an arrest. HRS § 803-6 provides that

> [i]n any case *in which it is lawful for a police officer to arrest a person without a warrant* for a misdemeanor, petty misdemeanor, or violation, the police officer may, but need not *issue a citation in lieu of the requirements of [making an arrest], if the police officer finds* and is reasonably satisfied that the person:
>
> . . . .
>
> (2) *Has no outstanding arrest warrants* which would justify the person's detention or give indication that the person might fail to appear in court[.]

3. Notably, the arresting officer in the instant case testified to his understanding that jaywalking is not an arrestable offense.

4. As to related statutes, HRS § 291C-164 (1993) does not apply in this case because it pertains to the issuance of a citation to a "driver," and Defendant was a pedestrian. HRS § 291C-164 reads:

(Emphases added.) Thus, by its terms, HRS § 803-6 permits a warrant check in furtherance of the officer's decision of whether to arrest or to cite. In my view, HRS § 803-6, however, does not control because, jaywalking, or "crossing at other than crosswalks," is not an arrestable offense under our statutes or our constitution.[3]

## III.

Whereas HRS § 803-6(b) and HRS § 291C-165 both relate to the issuance of citations for violations, the statutes may be construed in pari materia. While HRS § 803-6(b) allows generally that an arrest as well may be made for a violation, HRS § 291C-165 provides for the use of a citation only under the Traffic Code, where no arrest is mandated in the relevant statutes, as is the case with jaywalking. Insofar, then, as HRS § 803-6(b) may conflict with § 291C-165, the latter, relating as it does to traffic infractions, would control in a jaywalking case, it being the more specific statute of the two with respect to the violation involved here. *See State v. Kotis,* 91 Hawai'i 319, 330, 984 P.2d 78, 89, *reconsideration denied,* 1999 Haw. LEXIS 306 (1999); *Wong v. Takeuchi,* 88 Hawai'i 46, 53, 961 P.2d 611, 618 (1998); *State v. Vallesteros,* 84 Hawai'i 295, 303, 933 P.2d 632, 640, *reconsideration denied,* 84 Hawai'i 496, 936 P.2d 191 (1997); *Richardson v. City and County of Honolulu,* 76 Hawai'i 46, 55, 868 P.2d 1193, 1202, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994), *judgment aff'd,* 124 F.3d 1150 (9th Cir.1997) ("[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored.").

As a result, HRS § 291C-165 and not HRS § 803-6 applies in this case and only a citation may issue as a result of the infraction.[4] Because HRS § 803-6 does not apply,

**Procedure upon arrest.** Except when authorized or directed under state law to immediately take a person arrested for a violation of any of the traffic laws before a district judge, any authorized police officer, upon making an arrest for violation of the state traffic laws shall take the name, address, and *driver's license number* of the alleged violator and *the registered license number of the motor vehicle in-*

there is no statutory authorization for a warrant detention on a jaywalking citation. HRS § 803–6(2) would only condone a warrant check when the officer may lawfully choose to arrest or, in the alternative, to issue a citation. ·

## IV.

Furthermore, in my view, HRS § 803–6 would not apply in this case because an arrest for jaywalking, as purportedly permitted under HRS § 803–6, would violate our state constitution's prohibition against unreasonable seizures. Article I, section 7 of the Hawai'i Constitution prohibits unreasonable governmental seizures.[5] I believe an arrest for jaywalking would constitute an unreasonable seizure.

In *Atwater v. City of Lago Vista*, 532·U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), Gail Atwater was stopped while driving her children in her truck. None of them was wearing a seatbelt, a violation of the Texas seatbelt law. The violation was a misdemeanor punishable only by a fine. *See id.* at 323, 121 S.Ct. 1536. However, "Texas law expressly authorizes any peace officer to arrest without warrant a person found committing a violation of these seatbelt laws, although it permits police to issue citations in

lieu of arrest[.]" *Id.* at 323, 121 S.Ct. 1536 (brackets, internal quotation marks, and citation omitted).

The officer approached Atwater's truck, yelled at her, "[Y]ou're going to jail," and eventually arrested the woman for seatbelt violations. *Id.* at 324, 121 S.Ct. 1536 (brackets omitted). Atwater was transported to jail, where her "mug shot" was taken, and where she was placed into a cell for an hour, before being released on bond. *See id.*

Atwater sued the officer, the city, and its police chief for violation of her "Fourth Amendment right to be free from unreasonable seizure[.]"[6] *Id.* at 325, 121 S.Ct. 1536 (internal quotation marks omitted). The Fifth Circuit Court of Appeals, sitting en banc, upheld summary judgment in favor of the defendants on the ground that "the arrest was not unreasonable for Fourth Amendment purposes." *Id.* The United States Supreme Court granted certiorari "to consider whether the Fourth Amendment ... limits police officers' authority to arrest without warrant for minor criminal offenses." *Id.* at 326, 121 S.Ct. 1536.

The Supreme Court, in a five-to-four decision, affirmed the Fifth Circuit, holding that Atwater's "arrest satisfied constitutional requirements." *Id.* at 354, 121 S.Ct. 1536.

*volved* and shall issue to *the driver* in writing a summons or citation, hereinafter described, notifying *the driver* to answer to the complaint to be entered against *the driver* at a place and at a time provided in the summons or citation. (Emphases added.) I agree that *Vallesteros* is not factually relevant because there was not in the instant case, as there was in that case, any police order to Defendant to exit a vehicle at issue. I do not believe "the plain language of HRS § 286–10 (1993)," with respect to the "issu[ance of] a citation in lieu of arrest in those instances where they are not required to take the alleged violator before a judge[,]" majority opinion at 340, 48 P.3d at 587, is pertinent to jaywalking. Because the jaywalking provision, HRS § 291C–73, is not part of chapter 286, HRS § 286–10 (1993) is inapplicable. HRS § 286–10 reads:

    **Arrest or citation.** Except when required by state law to take immediately before a district judge a person arrested for violation of any provision of this chapter, hereinafter referred to enforcement officer, upon arresting a person *for violation of any provision of this chapter,* including any rule adopted pursuant to this chapter shall issue to the alleged violator a

summons or citation printed in the form hereinafter described, warning the alleged violator to appear and answer to the charge against the alleged violator at a certain place and at a time within seven days after such arrest.
(Boldfaced type in original.) (Emphasis added.)

5. In full, article I, section 7 of the Hawai'i Constitution reads:

    *The right of the people to be secure in their persons, houses, papers and effects against unreasonable* searches, *seizures* and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.
(Emphases added.)

6. Like article I, section 7 of our state constitution, the Fourth Amendment of the United States Constitution states, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

However, Justice O'Connor, joined by Justice Stevens, Justice Ginsburg, and Justice Breyer, dissented. As posed by Justice O'Connor, "the precise question presented [was] the constitutionality of a warrantless arrest for an offense punishable only by fine." *Id.* at 362, 121 S.Ct. 1536 (O'Connor, J., dissenting). According to Justice O'Connor, a citable fine-only offense did not warrant a "full custodial arrest":

> Because a full custodial arrest is such a severe intrusion on an individual's liberty, its reasonableness hinges on "the degree to which it is needed for the promotion of legitimate governmental interests," *Wyoming v. Houghton,* 526 U.S. [295,] 300 [119 S.Ct. 1297, 143 L.Ed.2d 408] [ (1999) ]. *In light of the availability of citations to promote a State's interests when a fine-only offense has been committed,* I cannot concur in a rule which deems a full custodial arrest to be reasonable in every circumstance....
>
> ....
>
> The record in this case makes it abundantly clear that Ms. Atwater's arrest was constitutionally unreasonable.... While [the officer] was justified in stopping Atwater, neither law nor reason supports his decision to arrest her instead of simply giving her a citation. *The officer's actions cannot sensibly be viewed as a permissible means of balancing Atwater's Fourth Amendment interests with the State's own legitimate interests.*

*Id.* at 365, 368, 121 S.Ct. 1536 (O'Connor, J., dissenting) (citation omitted) (emphases added). I would agree with Justice O'Connor's reasoning as it applies to arrests for violations punishable only by a fine.

An arrest of an individual who commits a citable violation offense for which prison time cannot be imposed is, in my view, a seizure that is unreasonable. Accordingly, insofar as HRS § 803-6 permits an arrest for a citeable violation, punishable by a fine only, it contravenes the prohibition against unreasonable seizures in article I, section 7 of our state constitution. Relying on the rationale expressed by Justice O'Connor, I would so hold on such independent state constitutional grounds.

Hence, in my view, "it is [not] lawful for an officer to arrest a person," HRS § 803-6, for a violation such as jaywalking which is punishable by fine only; the officer may only "issue a citation" for that infraction. *Id.* Whereas an arrest would not be sanctioned under the foregoing proposition, the premise for allowing a warrant check pursuant to HRS § 803-6, *i.e.,* to effectuate the officer's exercise of discretion to arrest or to cite, is lacking.

V.

Also, I cannot agree with the suggestion in footnote 1 that brief warrant checks that do not "significantly extend" investigatory stops or are not of an "unduly long" period are acceptable under the Hawai'i Constitution. *See* majority opinion at 342 n. 1, 48 P.3d at 589 n. 1 (stating that "[s]everal other jurisdictions ... have held that such action does not constitute an unreasonable seizure so long as the check does not significantly extend the period of detention[,]" but clarifying that investigative methods used to verify or confirm information " 'might cast doubt upon the reasonableness of the detention ... if their use makes the period of detention unduly long or involves moving the suspect to another locale' " (quoting *State v. Silva,* 91 Hawai'i 111, 118, 979 P.2d 1137, 1144 (App. 1999) [hereinafter *Silva I* ] )). To the contrary, this court has indicated that such conduct can, in fact, intrude upon a person's state constitutional rights. In *State v. Silva,* 91 Hawai'i 80, 979 P.2d 1106 (1999) [hereinafter *Silva II* ], this court agreed with the concurring and dissenting opinion in the decision of the Intermediate Court of Appeals (the ICA) in *Silva I.*

It was explained that this court "d[id] not read the ICA majority's opinion as *generally* allowing the police to prolong the detention of individuals subjected to brief, temporary investigative stops—once such stops have failed to substantiate the reasonable suspicion that initially justified them—solely for the purpose of performing a check for outstanding warrants." *Silva II,* 91 Hawai'i at 81, 979 P.2d at 1107. Thus, contrary to what is implied in footnote 1, generally, whenever

**348**

a warrant check prolongs a detention beyond its purpose, such a procedure violates article I, section 7 of the Hawai'i Constitution.

## VI.

I note that Officer Hood's testimony was conflicting with regard to the time line of events surrounding the warrant check and with regard to *when* he decided to request the check. The officer initially testified that he asked Defendant for identification for the purpose of citing Defendant for jaywalking *and because he "intended to run him for a warrant check."* (Emphasis added.) The officer then said that he *immediately* requested the warrant check after he had received Defendant's information, and contemporaneously wrote Defendant's information in his notebook. However, upon further questioning, he stated that he was jotting down Defendant's information when Defendant "start[ed] acting weird, which prompt[ed him] or heighten[ed his] suspicions, *so [he] decide[d] to ask for a warrant check."* (Emphasis added.) He then testified that *he did not run the warrant check until twenty-five to thirty seconds after he stopped Defendant.*

These inconsistencies arguably call into question Officer Hood's testimony. However, Defendant did not challenge any of the court's findings of fact. Thus, finding 7, that, "[a]s Hood began getting the salient information from Defendant's identification card in order to issue the citation, he *also* contacted dispatch on his shoulder mounted radio to have them determine whether Defendant had any outstanding warrants," (emphasis added) is binding. Given that finding, the officer's actions did not violate the strictures of *Silva II. See* 91 Hawai'i at 81, 979 P.2d at 1107.