STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JON CURTIS ESTABILLIO, JR., Defendant-Appellant.
No. 28950.
Intermediate Court of Appeals of Hawaii.
March 13, 2009.
On the briefs:
Phyllis J. Hironaka, Deputy Public Defender, for Defendant-Appellant,
Jason M. Skier, Deputy Prosecuting Attorney, County of Hawai'i, for Plaintiff-Appellee.

MEMORANDUM OPINION
RECKTENWALD, C.J., FOLEY and FUJISE, JJ.
Defendant-Appellant Jon Curtis Estabillio, Jr. (Estabillio) appeals from the Judgment of Conviction and Sentence (Judgment) filed on December 28, 2007, in the Circuit Court of the Third Circuit (Circuit Court).[1] The circuit court entered the Judgment nunc pro tunc to December 14, 2 007.
On appeal, Estabillio contends the circuit court was wrong in denying his Motion to Suppress Evidence (Motion to Suppress). He maintains that although the traffic violations warranted the stop, the police officers' continued detention of him for a drug investigation was illegal because no reasonable suspicion existed. Estabillio asks this court to conclude that the circuit court was wrong when it denied his Motion to Suppress, to vacate the Judgment, and to remand for further proceedings.

I. BACKGROUND
On January 5, 2006, Estabillio was arrested for Promoting a Dangerous Drug in the Third Degree. On January 19, 2006, the State of Hawai'i (State) charged Estabillio by amended complaint with thirteen offenses, including Attempted Promoting a Dangerous Drug in the First Degree (Attempted Promotion), in violation of Hawaii Revised Statutes (HRS) §§ 705-500(1) (b) (1993) and 712-1241(b)(b)(ii) (Supp. 2005).
On December 28, 2006, Estabillio filed his Motion to Suppress, asking the circuit court to suppress, inter alia, the cocaine, brass knuckles, and money recovered from his person after his arrest. On July 20, 2007 and August 31, 2007, the circuit court held hearings on the Motion to Suppress.
From the testimony at the hearings, the following facts were elicited: On January 5, 2006, Hawai'i County Police Department (HCPD) vice division Officer Prudencio called Traffic Enforcement Unit Officer Pauole and requested assistance in conducting a traffic stop of Estabillio because Estabillio was the "target" for arrest based on information from a confidential informant that Estabillio was dealing drugs. Officer Pauole understood that he was being asked to assist in Officer Prudencios drug investigation of Estabillio and "the plan" was for Officer Pauole to stop Estabillio and for Officer Prudencio to appear and conduct the drug investigation.
Officer Pauole stopped Estabillio on January 5, 2006 for speeding and for a discrepancy with the weight-tax emblem (registration sticker) affixed to the license plate of the vehicle Estabillio was driving. According to police dispatch, Estabillio's registration sticker had expired, but the registration sticker on his vehicle showed that it was current. While Officer Pauole was asking Estabillio for his driver's license, vehicle registration, and no-fault insurance card, Officer Prudencio arrived with other vice-officers. A couple of minutes passed between the traffic stop and Officer Prudencio's arrival.
Because Estabillio could provide only his driver's license, Officer Pauole had cause to cite Estabillio for failure to have vehicle registration and insurance for the vehicle Estabillio was driving, in addition to the fraudulent registration sticker and speeding citations. Officer Pauole returned to his car to write the citations and run a warrant check. It would have taken Officer Pauole 15-20 minutes to write the five citations, and from the time he stopped Estabillio until Officer Prudencio informed him that Estabillio was going to be arrested, probably less than 10 minutes had elapsed.
When Officer Pauole walked back to his car with Estabillio's driver's license, Officer Prudencio approached Estabillio, who remained seated in the car. Officer Prudencio told Estabillio that a confidential informant had described Estabillio as a mid-level cocaine dealer and asked if Estabillio would consent to a search of the car. Officer Pauole stood by his own car and waited, watching the encounter between Officer Prudencio and Estabillio.
Estabillio refused Officer Prudencio's request, and Officer Prudencio called Officer Quiocho and asked him to bring the narcotics canine (dog). Officer Quiocho was parked down the road from the arrest site and arrived with the dog minutes later. Upon Officer Quiocho's arrival, the dog screened the car with Estabillio still seated inside the vehicle and alerted the officers to the presence of drugs in the car.
Officer Prudencio arrested Estabillio for Promoting a Dangerous Drug in the Third Degree and then searched Estabillio at the scene. Officer Prudencio obtained a search warrant for Estabillio's car and a search warrant for the container found on Estabillio.[2]
A few days later, Officer Prudencio showed Estabillio photos of items found in Estabillio!s car. Estabillio was given his Miranda rights, but waived them and made a statement to Officer Prudencio.
At the close of the hearing, the circuit court denied Estabillio's Motion to Suppress:
[THE COURT:] In this particular case, I think the question is one of, uh, the fourth amendment rights, of [Estabillio] in terms of his reasonable expectation of privacy. And after he had been stopped by Officer Pa[u]ole, I don't think there's any question about the initial stop having been legitimate for reasons of traffic violations, whether or not the continued detention of [Estabillio], uh, and the intrusion of his rights, uh, to remain free from detention was unreasonable, and under the circumstances, the Court will find that it was not.
There was a continuing investigation for traffic offenses at the time  the times involved, even though there may be some discrepancies in terms of the, uh, length of time involved and the, perhaps the, uh, sequence in which certain events occurred I think is all within a reasonable time to conduct a traffic stop. And all of what happened with respect to the, urn, canine screen was within the time to reasonably conduct a traffic stop and conduct a traffic investigation and to have issued citations. Um, the law is basically, with respect to pretext stops, that the  if there is a valid legal basis for the, uh, intrusion for the stop for the arrest or search, um, that even though there may be, uh, possibilities of ulterior motives by the police that that's not going to be a reason to taint the search or the stop.
So the Court's going to deny the motion to suppress.
The circuit court did not file any written Findings of Fact (FOFs) or Conclusions of Law (COLs) or a written order denying the Motion to Suppress.
On September 17, 2007, Estabillio entered a conditional guilty plea to the charge of Attempted Promotion pursuant to a plea agreement, which included the dismissal of the remaining twelve counts and the reservation of Estabilliof's right to appeal the denial of his Motion to Suppress.
On December 28, 2007, the circuit court entered its Judgment, nunc pro tunc to December 14, 2007. The circuit court convicted Estabillio of the Attempted Promotion charge and sentenced him to twenty years of incarceration.
Estabillio timely appealed.

II. STANDARD OF REVIEW
Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/wrong standard. Furthermore, . . . the proponent of a motion to suppress has the burden of establishing not only that the evidence sought to be excluded was unlawfully secured, but also, that his own Fourth Amendment rights were violated by the search and seizure sought to be challenged. The proponent of the motion to suppress must satisfy this burden of proof by a preponderance of the evidence.
State v. Balberdi, 90 Hawai'i 16, 20-21, 975 P.2d 773, 777-78 (App. 1999) (quoting State v. Anderson, 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997)).
Consequently, we "review the circuit court's ruling on a motion to suppress de novo to determine whether the ruling was right or wrong. State v. Eleneki, 106 Hawai'i 177, 179, 102 P.3d 1075, 1077 (2004) .

III. DISCUSSION
In State v. Barros, 98 Hawai'i 337, 48 P. 3d 584 (2002), the Hawai'i Supreme Court held that a warrant check conducted by a police officer who lawfully stopped Barros for jaywalking was not an unreasonable intrusion of Barros's constitutional right against unreasonable searches and seizures, because "[t]he warrant check was completed entirely within the time required for [the officer] to issue the citation." 98 Hawai'i at 342-43, 48 P.3d at 589-90.
In the instant case, it is undisputed that Officer Pauole lawfully stopped Estabillio for speeding and for a registration sticker discrepancy. Furthermore, the record establishes that the narcotics canine screen[3] was conducted simultaneously with the citation procedure and within the time required for Officer Pauole to issue the citations. Because the evidence in the record substantially demonstrates that the initial stop was lawful and the narcotics canine screen was conducted within the time reasonably required to conduct the traffic stop and issue the citations, the circuit court was not wrong in denying Estabillio's motion to suppress.

IV. CONCLUSION
The Judgment of Conviction and Sentence filed on December 28, 2007, nunc pro tunc to December 14, 2007, in the Circuit Court of the Third Circuit is affirmed.
NOTES
[1] The Honorable Glenn S. Hara presided.
[2] A search of both produced cocaine and drug paraphernalia.
[3] Estabillio had "no reasonable expectation of privacy in the airspace surrounding" his vehicle. See State v. Groves, 65 Haw. 104, 112, 649 P.2d 366, 371-72 (1982) .